**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| SCOTT WEAVER, individually and on behalf of a class of similarly situated individuals,<br><br>      Plaintiff,<br> v.<br><br>CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP,<br><br>      Defendants. | Case No. 2:18-cv-01996-JPS |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................................1

II.  SUMMARY OF FACTS ........................................................................................2

III.  STANDARD OF REVIEW ....................................................................................3

IV.  PLAINTIFF HAS STATED A PLAUSIBLE CLAIM .........................................4

    A.  Plaintiff's Detailed SAC Puts Defendants on Notice of the Claims Against Them ...........................................................................................................4

    B.  Recent Decisions Involving Substantially Similar Allegations Support Denying Defendants' Motion ...................................................................5

    C.  Defendants' Failure to Adequately and Regularly Test for Pentobarbital Exposed Plaintiff to Pentobarbital Contamination and/or the High Risk of Pentobarbital Contamination ...................................................................7

    D.  Customer Reaction to Defendants' White Paper Prove that Consumers Are Materially Concerned Over the Mere Presence of Heavy Metals in the Dog Food ................................................................................................8

V.  PLAINTIFF'S ALLEGATIONS SUFFICIENTLY DEMONSTRATE THAT DEFENDANTS' ADVERTISING STATEMENTS ARE MISLEADING ......................8

    A.  Falsity Should Not Be Determined on a Rule 12(b)(6) Motion.............................9

    B.  Defendants' Representations Are Actionable ........................................................9

VI.  PLAINTIFF HAS ADEQUATELY STATED A CLAIM FOR BREACH OF EXPRESS WARRANTY ...................................................................................13

VII.  FRAUD BY OMISSION IS SUFFICIENTLY PLED ......................................16

VIII.  THE UNJUST ENRICHMENT CLAIM IS PROPERLY PLED.....................18

IX.  CONCLUSION.......................................................................................................21

# TABLE OF AUTHORITIES

**CASES**                                                                                                                                    **PAGE(S)**

*Adkins v. Nestle Purina Petcare Co.*,
    973 F. Supp. 2d 905 (N.D. Ill. 2013) ...............................................................................10

*Alvarado v. Litscher*,
    267 F.3d 648 (7th Cir. 2001) .......................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................3, 4

*Associated Banc-Corp. v. John H. Harland Co.*,
    No. 06-C-1097, 2007 WL 128337 (E.D. Wis. Jan. 11, 2007) ...........................................19

*Ball v. Sony Elecs. Inc.*,
    No. 05-cv-307-S, 2005 WL 2406145 (W.D. Wis. Sept. 28, 2005)....................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................................3

*Blitz v. Monsanto Co.*,
    317 F. Supp. 3d 1042 (W.D. Wis. 2018) .......................................................................21

*Breedlove v. Earthgrains Baking Cos., Inc.*,
    140 F.3d 797 (8th Cir.) ..................................................................................................4

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ........................................................................10

*Champion Labs., Inc. v. Cent. Ill. Mfg. Co.*,
    157 F. Supp. 3d 759 (N.D. Ill. 2016) ..............................................................................9

*Cook, Perkiss, & Liehe, Inc., v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) .......................................................................................10

*Daanen & Janseen, Inc. v. Cedarapids, Inc.*,
    216 Wis. 2d 395, 573 N.W.2d 842 (Wis. 1998) .............................................................15

*Emirat AG v. High Point Printing, LLC*,
    248 F. Supp. 3d 911 (E.D. Wis. 2017).........................................................................21

*Enger v. Chicago Carriage Cab Corp.*,
    812 F.3d 565 (7th Cir. 2016) .........................................................................................6

*G & S Holdings LLC v. Cont'l Cas. Co.*,
    697 F.3d 534 (7th Cir. 2012) .........................................................................................4

Case 2:18-cv-01996-JPS   Filed 04/25/19   Page 3 of 28   Document 29

*G. D. Searle & Co. v. Charles Pfizer & Co.*,
  231 F.2d 316 (7th Cir. 1956) ............................................9

*Gliniecki v. Brunswick Corp.*,
  No. 12-cv-280, 2012 WL 2046500 (E.D. Wis. June 6, 2012) ...........16

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...............................7

*Hoppe v. SmithKline Beecham Corp.*,
  437 F. Supp. 2d 331 (E.D. Pa. 2006) ................................14

*In re MI Windows and Doors, Inc. Prods. Liab. Litig.*,
  No. 2:12-mn-00001-DCN, 2012 WL 6674522 (D.S.C. Dec. 21, 2012)......14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2011 U.S. Dist. LEXIS 110635 (N.D. Cal. Sep. 28,
  2011) ..............................................................20

*Jones v. Int'l Ass'n of Bridge Structural Ornamental & Reinforcing Iron Workers*,
  864 F. Supp. 2d 760 (E.D. Wis. 2012) ...............................12

*Lamont v. Winnebago Indus., Inc.*,
  569 F. Supp. 2d 806 (E.D. Wis. 2008) ...............................14

*Leppert v. Champion Petfoods USA, Inc.*,
  2019 WL 216616 (N.D. Ill. Jan. 16, 2019) ......................*passim*

*Loeb v. Champion Petfoods USA Inc.*,
  359 F. Supp. 3d 597 (E.D. Wis. Feb. 6, 2019).....................6, 21

*Loeb v. Champion Petfoods USA, Inc., et al.*,
  2018 WL 2745254 (E.D. Wis. June 7, 2018).......................5, 6, 19

*McCormack v. Citibank, N.A.*,
  979 F.2d 643 (8th Cir. 1992)), *cert. denied*, 525 U.S. 921(1998) ......4

*Mead Johnson & Co. v. Abbott Labs.*,
  209 F.3d 1032 (7th Cir. 2000) ......................................9

*Midwhey Powder Co., Inc. v. Clayton Indus.*,
  157 Wis. 2d 585, 460 N.W.2d 426 (Wis. Ct. App. 1990)...............14

*Mitchell v. Shomig*,
  969 F. Supp. 487 (N.D. Ill. 1997) ..................................4

*Paulson v. Olson Implement Co., Inc.*,
  107 Wis. 2d 510, 319 N.W.2d 855 (Wis. 1982) .......................14

Case 2:18-cv-01996-JPS   Filed 04/25/19   Page 4 of 28   Document 29

*Ramsey v. Ellis*,
 168 Wis. 2d 779, 484 N.W.2d 331 (Wis. 1992) .............................................................20

*Reitman v. Champion Petfoods USA, Inc.*,
 No. CV 18-1736 DOC, 2019 U.S. Dist. LEXIS 67540 (C.D. Cal. Feb. 6,
 2019) ...........................................................................................................7, 10, 16

*Sands v. Menard*,
 2017 WI 110, 379 Wis. 2d 1, 904 N.W.2d 789 (Wis. 2017), *recons.*
 *denied*, 2018 WI 20, 300 Wis. 2d 107, 909 N.W.2d 176, *and cert. denied*,
 139 S. Ct. 101 (2018) ..........................................................................................18, 20

*Schmidt v. Bassett Furniture Indus.*,
 08-C-1035, 2009 WL 3380354 (E.D. Wis. Oct. 20, 2009)........................................17, 18

*Selzer v. Brunsell Bros., Ltd.*,
 2002 WI App 232, 257 Wis. 2d 809, 652 N.W.2d 806 (Wis. Ct. App.
 2002) .............................................................................................................13

*Smith v. President of United States*,
 No. 08-CV-956, 2009 WL 2591624 (E.D. Wis. Aug. 21, 2009)........................................4

*Spensley Feeds, Inc. v. Livingston Feed & Lumber, Inc.*,
 128 Wis. 2d 279, 381 N.W.2d 601 (Ct. App. 1985) .............................................19

*St. Paul Mercury Ins. Co. v. The Viking Corp.*,
 539 F.3d 623 (7th Cir. 2008) ...........................................................................15, 16

*Sunnyslope Grading, Inc. v. Miller, Bradford and Risberg, Inc.*,
 148 Wis. 2d 910, 437 N.W.2d 213 (Wis. 1989) .............................................14

*Tamayo v. Blagojevich*,
 526 F.3d 1074 (7th Cir. 2008) ...........................................................................4

*Twin Disc, Inc. v. Big Bud Tractor, Inc.*,
 582 F. Supp. 208 (E.D. Wis. 1984)........................................................................16

*Uebelacker v. Paula Allen Holdings, Inc.*,
 464 F. Supp. 2d 791 (W.D. Wis. 2006) ...........................................................10, 11

*Van's Realty & Const. of Appleton, Inc. v. Blount Heating & Air Conditioning,*
 *Inc.*,
 134 Wis. 2d 452, 397 N.W.2d 156 (Wis. Ct. App. Oct. 7, 1986)......................................15

*Watts v. Watts*,
 137 Wis. 2d 506, 405 N.W.2d 303 (Wis. 1987) .............................................19

*Zeiger v. WellPet LLC,*
    304 F. Supp. 3d 837 (N.D. Cal. 2018) ...............................................................................7

Case 2:18-cv-01996-JPS   Filed 04/25/19   Page 6 of 28   Document 29

## I.    INTRODUCTION

Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion") should be denied because all claims are sufficiently pled in the Second Amended Complaint (ECF No. 23) ("SAC").[1] Plaintiff Scott Weaver ("Plaintiff") initiated this action to end Defendants' practices of misrepresenting and failing to fully disclose the presence and/or risk of inclusion in their pet food of heavy metals, pentobarbital, toxins, BISPHENOL A ("BPA"), non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements, thereby allowing consumers, like Plaintiff, to be fully informed when considering purchasing the dog foods.

Defendants' Motion, however, asks this Court to ignore the consumers, like Plaintiff and the proposed class, and instead simply apply how Defendants view their labels, packaging, advertising, and statements. In doing so, Defendants fail to offer any authority that says the legal standard is whether a company finds its own statements and advertising misleading or false. This is not surprising, as the legal standard is clear—it is what a reasonable consumer, like Plaintiff and the proposed Class, would view as material and/or misleading that matters. Indeed, it is Defendants' opinion that: (1) the presence of heavy metals or BPA at trace levels would not matter to a consumer; (2) the packaging that repeatedly uses the terms regional and fresh are not misleading; and (3) a reasonable consumer who purchases this ultra premium-priced dog food touted as superior quality, healthy, and only using trusted regional suppliers would be unconcerned by the fact that their supplier of tallow and meal has the risk of supplying (and did in fact supply) them with ingredients that tested positive for pentobarbital. Accepting any of these "opinions" at

---

[1] "Defendants" or "Champion" refers to Champion Petfoods USA, Inc. and Champion Petfoods LP.

this stage is wholly improper, as it construes the allegations against Plaintiff and also makes factual determinations at the motion to dismiss stage.

In the end, this case is not about Defendants' understanding of their own advertising and statements. Instead, it is that Defendants engaged in a far-reaching and misleading advertising campaign and sold the Contaminated Dog Foods (defined in ¶¶7, 25)[2] without disclosing that they contain the presence and/or the risk of inclusion in their pet food of heavy metals, pentobarbital, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels. As a result, reasonable consumers purchased the Contaminated Dog Foods at a significant price premium when in fact they could not or would not have bought them at all if the true quality and nature were disclosed.[3]

## II.     SUMMARY OF FACTS

Defendants' Motion should be denied because all claims are sufficiently pled in the SAC. Plaintiff initiated this action to end Defendants' practices of misrepresenting and failing to fully disclose the presence of toxic heavy metals and chemicals in their pet food sold in the United States (SAC ¶¶1-7), thereby allowing consumers, like Plaintiff, to be fully informed when considering whether to purchase the Contaminated Dog Foods.

Plaintiff alleges that Defendants knowingly, recklessly, and/or negligently misrepresent and fail to fully disclose the presence and risk of presence of heavy metals, chemicals, and other toxins in their pet food sold under the brand names of Acana and Orijen throughout the United

---

[2] Unless otherwise noted, all paragraph references ("¶_" or "¶¶_-_") are to the SAC.

[3] Defendants have publicly acknowledged that they knew the Dog Foods contained heavy metals in a White Paper published on a remote section of their website and did not update their marketing, advertising, labeling, and packaging to disclose the White Paper findings. Defendants also stated that they are aware of the known risk of the inclusion of BPA but admittedly did not perform testing.  SAC, ¶¶101-103, 101 n.27

States. Specifically, the Contaminated Dog Foods contain some level of arsenic, mercury, lead, cadmium (¶¶7, 26-40), BPA (¶¶7, 53-57), and/or pentobarbital (¶¶41-52)—all of which are known to pose health risks to humans and animals. Pentobarbital, moreover, is dangerous to humans and animals in *any* amounts. ¶41. Yet, despite the known risks of exposure to these heavy metals, BPA, and/or pentobarbital, Defendants engaged in a far-reaching and misleading advertising campaign and sold the Contaminated Dog Foods without disclosing they contain levels of arsenic, mercury, cadmium, lead, BPA, and/or pentobarbital with labeling, advertising, statements, warranties, and/or packaging that misrepresents the Contaminated Dog Foods as natural, superior quality (including human grade ingredients), healthy, and safe for consumption. ¶6. As a result, reasonable consumers, including Plaintiff, purchased the Contaminated Dog Foods in reliance on Defendants' omissions and misrepresentations at a significant premium when in fact they would not have bought it at all if the true quality and nature were disclosed.[4] ¶21.

## III.    STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), a complaint's factual allegations should "raise a right to relief above the speculative level" and contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The court may only dismiss a complaint when "'it appears

---

[4] Defendants have publicly acknowledged that they knew the Contaminated Pet Foods contained heavy metals in a white paper published on a remote section of their website (the "White Paper") and did not update their marketing, advertising, labeling, and packaging to disclose the White Paper findings. ¶¶105-07. Defendants also stated that they are aware of the known risk of the inclusion of BPA but admittedly did not perform testing on all products. ¶¶8-10, 108. Defendants likewise were aware of the inclusion of pentobarbital in their foods yet did not adequately test relevant samples or disclose the dangerous contamination to consumers. ¶¶48-50.

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."' *Breedlove v. Earthgrains Baking Cos., Inc.*, 140 F.3d 797, 799 (8th Cir.) (citing *McCormack v. Citibank, N.A.*, 979 F.2d 643, 646 (8th Cir. 1992)), *cert. denied*, 525 U.S. 921(1998).[5] As this Court has stated:

> When considering a motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts alleged, and draws all possible inferences in the plaintiff's favor.

*Smith v. President of United States*, No. 08-CV-956, 2009 WL 2591624, at *1 (E.D. Wis. Aug. 21, 2009) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

## IV.    PLAINTIFF HAS STATED A PLAUSIBLE CLAIM

For the reasons set forth below, the SAC properly satisfies the requirement "to state a claim to relief that is plausible on its face." *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012); *Ashcroft*, 556 U.S. at 678. Defendants' attacks on Plaintiff's well-pled factual allegations are improper and without merit.

### A.    Plaintiff's Detailed SAC Puts Defendants on Notice of the Claims Against Them

The court must accept as true all of the plaintiff's well pleaded factual allegations when deciding a motion to dismiss. *Mitchell v. Shomig*, 969 F. Supp. 487, 489 (N.D. Ill. 1997). The following allegations are accordingly assumed to be true: (1) consumption of foods containing BPA, heavy metals, pentobarbital, and other toxins carry known risks (¶¶26-57); (2) Defendants' pet food was contaminated and/or at high risk of contamination for BPA, heavy metals, pentobarbital, and/or other unnatural ingredients (¶¶92, 94-95, 102), and (3) Defendants were aware of these risks and their materiality to consumers. (¶¶63-91).

---

[5] Here, as throughout, all emphasis is deemed added and citations and footnotes are omitted unless otherwise noted.

The mere presence of these contaminants is sufficient to state a plausible claim because the SAC alleges that Defendants mislead consumers into believing that they are purchasing dog food without any BPA, heavy metals, and/or pentobarbital. The SAC targets Defendants' deceptive, misleading, and false marketing of its dog food as natural, healthy, fresh, regional, of high quality, possessing rigid quality controls, and various trademarked marketing terms. ¶16. The SAC outlines Defendants' representations that mislead reasonable consumers such as Plaintiff into believing that their products do not contain contaminants, such as BPA, heavy metals, and pentobarbital. ¶¶6-7, 93. The SAC alleges that Defendants' products were contaminated by BPA and heavy metals at detectable levels and that Defendants used pentobarbital-contaminated beef tallow at least once in producing their dog food. ¶¶6-7, 13.  Furthermore, Defendants knew or should have known that consumers considered the mere presence of these contaminants to be material, as evidenced by the SAC reference to numerous regulations, articles, and research detailing the known harmful and toxic effects caused by consuming BPA, heavy metals, and/or pentobarbital. ¶¶26-57.

**B.      Recent Decisions Involving Substantially Similar Allegations Support Denying Defendants' Motion**

Defendants mistakenly assert that Plaintiff's heavy metal claims are nullified because the SAC failure to include a violated heavy metal or BPA standard.  Defs.' Mem. at 5-7. Defendants' argument has already been rejected in a related action filed against Defendants in the U.S. District Court for the Eastern District of Wisconsin. *Loeb v. Champion Petfoods USA, Inc., et al.*, 2018 WL 2745254 (E.D. Wis. June 7, 2018). The *Loeb* court rejected Defendants' nearly identical argument, explaining that "Defendants maintain that [p]laintiff must plead the standard or metric by which the products would be considered safe for dogs or fit for human consumption…. None of this is necessary." *Id*. at *5. The court explained that this alleged deficiency did not establish beyond doubt that plaintiff "could prove no set of facts in support of [her] claim that would entitle

[her] to the relief requested." *Id.* (quoting *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (alterations in original)). Accordingly, Defendants' argument here is patently inconsistent with the *Loeb* court's decision.

Defendants are also misguided in their reliance on a subsequent *Loeb* decision, which involves a summary judgment opinion and is an action that involves distinctly different allegations. *Loeb v. Champion Petfoods USA Inc.*, 359 F. Supp. 3d 597, 604-05, 605 n.7 (E.D. Wis. Feb. 6, 2019). Although both actions concern Defendants' products containing undisclosed contaminants, the *Loeb* complaint depended primarily on the specific allegation that Defendants' pet food had ***excessive and dangerous levels*** of heavy metals. In contrast, here, the SAC pleads the broader concern that Defendants mislead consumers about the ***mere presence*** and/or high risk of contaminants in Defendants' pet food and does not mention unsafe or excessive levels. ¶10. Furthermore, this case involves additional allegations that the *Loeb* court did not consider, including the presence of BPA and pentobarbital in Defendants' pet food, Defendants' use of non-regional, non-fresh, and outsourced ingredients, and Defendants' inadequate testing of its products. ¶¶6-7, 13, 47. The *Loeb* court also largely took issue with the plaintiff's lack of expert support and failure to amend the complaint to reflect additional allegations being raised for the first time. The SAC suffers no comparable pleading deficiencies. ¶¶6-7, 13, 47.

Likewise, other courts have rejected Defendants' arguments in related actions filed against them. For instance, although Defendants cherry-pick language from *Leppert v. Champion Petfoods USA, Inc.*, 2019 WL 216616, at *6 (N.D. Ill. Jan. 16, 2019), a review of the opinion in its entirety supports denying Defendants' Motion. The *Leppert* court denied Defendants' motions to dismiss, in part, and explained that:

> It is entirely plausible that a consumer purchasing what she believes to be healthy, natural and high-quality cat food would not purchase that cat food if she knew it contained any

amount of heavy metals and/or BPA. Here, Plaintiffs theory does not rely on any particular level of heavy metals or BPA as being "unsafe" or dangerous; the mere fact that heavy metals and/or BPA are associated with potential health risk to animals and humans whatsoever could lead a consumer to believe that cat food containing these substances at any level is neither healthy, natural nor high quality.

*Id.* at \*6. *Reitman v. Champion Petfoods USA, Inc.* is another related action brought against Defendants that reached the same conclusion. No. CV 18-1736 DOC (JPRx), 2019 U.S. Dist. LEXIS 67540, at \*10-11 (C.D. Cal. Feb. 6, 2019) (rejecting that allegations of what specific levels of heavy metals and BPA are unsafe for pets is required).[6] Like *Leppert* and *Reitman*, the SAC's allegations here are entirely plausible and do not rely on the presence of unsafe or excessive levels of contaminants.

### C. Defendants' Failure to Adequately and Regularly Test for Pentobarbital Exposed Plaintiff to Pentobarbital Contamination and/or the High Risk of Pentobarbital Contamination

Defendants incorrectly argue that the SAC failed to plead that Plaintiff purchased dog food containing pentobarbital. Defs.' Mem. at 8. The SAC specifically alleges that Plaintiff purchased contaminated dog food from January 2007 to October 2017, which contained ***and/or had a risk*** of containing the disclosed levels of pentobarbital. ¶20. While Plaintiff stopped purchasing the contaminated dog food prior to the FDA's investigation in 2018, Defendants baselessly assume that the May 2018 contamination precludes the possibility of any prior contamination. As alleged

---

[6] The *Leppert* and *Reitman* courts' interpretation of the present theory was also affirmed by recent decisions in the U.S. Court of Appeals for the Ninth District. *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 852 (N.D. Cal. 2018) ("While WellPet claims that plaintiffs cannot establish that the levels of arsenic, lead, or BPA in their foods are unsafe or unhealthy for dogs, that issue is in dispute and is inappropriate for resolution on a motion to dismiss."); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1120 (N.D. Cal. 2018) ("[N]one of Plaintiff's claims require Plaintiff to prove that he or any other class member was physically harmed as a result of Kellogg's alleged misconduct. Instead, Plaintiff 'is seeking to recover for the ***economic*** injury caused by Kellogg representing that its … foods are healthy.' Thus, Plaintiff's claims will be evaluated according to an objective 'reasonable consumer' standard.") (emphasis and alteration in original).

in the SAC, and is presumed to be true, "Defendants do not adequately or regularly test their ingredients or finished product for pentobarbital." ¶47. Because Plaintiff was subject to Defendants' same substandard quality controls that led to their products containing pentobarbital, Plaintiff paid premium prices for dog food that at least had a high risk of pentobarbital contamination.

> ### D. Customer Reaction to Defendants' White Paper Prove that Consumers Are Materially Concerned Over the Mere Presence of Heavy Metals in the Dog Food

While Defendants tout their White Paper as exonerating evidence, Defendants incorrectly assume that their self-serving and deceptive conclusions are entitled to the presumption of truth. Defs.' Mem. at 5-6. As pled in the SAC, Defendants' White Paper actually evidenced a pattern of consumers' material and keen interest towards heavy metals when purchasing dog food. ¶¶105-107. The SAC pleads that consumers routinely requested heavy metal testing results from Defendants over the years, including inquiries about the White Papers' specific heavy metal testing data results. *Id*. The SAC further references regulations, articles, and research detailing the known harmful and toxic effects caused by daily consumption of heavy metals to show that the presence of these contaminants at any level is material to a reasonable consumer. ¶¶26-57. Thus, the SAC appropriately alleges that the mere presence of contaminants, including heavy metals, is sufficient to satisfy pleading requirements.

## V. PLAINTIFF'S ALLEGATIONS SUFFICIENTLY DEMONSTRATE THAT DEFENDANTS' ADVERTISING STATEMENTS ARE MISLEADING

In arguing that Plaintiff's allegations about Champion's misleading advertising statements should be dismissed, Defendants misrepresent Plaintiff's claims and attempt to bring in evidence in a conclusory fashion that is outside the allegations in the SAC. Contrary to Champion's

contention, the SAC properly alleges that certain advertising statements made by Champion are misleading, and these claims should not be dismissed.

### A.    Falsity Should Not Be Determined on a Rule 12(b)(6) Motion

Champion asks that this Court dismiss Plaintiff's allegations about their misrepresentations at the pleadings stage, but courts have recognized that "whether a claim is either 'false' or 'misleading' is an issue of fact rather than law." *Mead Johnson & Co. v. Abbott Labs.*, 209 F.3d 1032, 1034 (7th Cir. 2000). Similarly, "[t]he ultimate determination of consumer confusion is a question of fact." *G. D. Searle & Co. v. Charles Pfizer & Co.*, 231 F.2d 316, 318 (7th Cir. 1956).

Because there is a disputed issue of fact as to whether Champion's labeling of the Contaminated Dog Foods as "Biologically Appropriate," made with "Fresh Regional Ingredients," "Ingredients deemed fit for human consumption," "Premium Meat and Fish Ingredients," "Delivered Daily," "Made with Fresh and Natural Ingredients," "Never Outsourced," and that they "Nourish as Nature Intended," "Delivering Nutrients Naturally" are misleading, this decision is not appropriately made on a motion to dismiss. *See Champion Labs., Inc. v. Cent. Ill. Mfg. Co.*, 157 F. Supp. 3d 759, 763 (N.D. Ill. 2016) (denying a motion to dismiss a false advertising claim based on defendants' argument that the allegedly false statement was not actionable "puffery," recognizing: "[I]t bears repeating that because this Court must look at context to determine if a statement is false, the issue of puffery is not amenable to resolution on a motion to dismiss …..")

### B.    Defendants' Representations Are Actionable

Defendants' representations that its foods are "Biologically Appropriate," made with "Fresh Regional Ingredients" and "Ingredients deemed fit for human consumption," contain "Premium Meat and Fish Ingredients," are "Delivered Daily," are "Made with Fresh and Natural Ingredients," are "Never Outsourced," and that that they "Nourish as Nature Intended," and "Delivering Nutrients Naturally," are each actionable statements. Far from being vague,

subjective, or exaggerated, Champion's misrepresentations (many of which are made directly on the packaging of its food), were relied on by Plaintiff when purchasing the Contaminated Dog Foods. *See, e.g.*, ¶¶20, 133; *see also Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 806 (W.D. Wis. 2006) (defining commercial puffery as a statement "on which no reasonable person would rely.").

In the context of food, the terms "nutritious" and "nourishing" essentially mean containing substances necessary for growth and health or beneficial to health, without artificial aid. None of these terms are "outrageous" or "'so exaggerated as to preclude reliance by consumers.'" *Cook, Perkiss, & Liehe, Inc., v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). Rather, a reasonable consumer could plausibly rely on these statements to mean that the product either is healthy or, at least, would not harm their health. *See Adkins v. Nestle Purina Petcare Co.*, 973 F. Supp. 2d 905, 919 (N.D. Ill. 2013) ("Plaintiffs are correct that 'wholesome' at the very least conveys the safety of the treats to the consumer, and therefore cannot be puffery."). Thus, these are statements that convey factual representations about the safety and quality of the dog foods to the consumer, and therefore cannot be puffery. *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010).

In similar cases, courts have already held that Defendants' representation that the Contaminated Dog Foods are "Biologically Appropriate" is an "assertion[] of fact, of which the seller has special knowledge and the buyer is ignorant," and is thus not puffery. *See Leppert*, 2019 WL 216616, at *7; *see also Reitman*, 2019 U.S. Dist. LEXIS 67540, at *13 (finding this claim is a "disputable fact[] that cannot be dismissed as mere puffery or opinions."). Champion's contention that it's a "philosophy" as opposed to a representation is belied by the prominent use of the phrase on the packaging of the Contaminated Dog Food with no disclaimer that it is simply

Champion's own philosophy. *See, e.g.*, ¶25(e) (showing an image of Orijen Original dog food where "Biologically Appropriate Dog Food" appears in large font directly under the name of the food). It is not an "'exaggeration[] reasonably to be expected of a seller as to the degree of quality'" of Champion's products, but rather an objectively false claim on which Plaintiff and the proposed Class relied. *See Uebelacker*, 464 F. Supp. 2d at 806. Moreover, Plaintiff has shown that this claim is misleading by alleging that the Contaminated Dog Foods contain heavy metals, pentobarbital, BPA, and other unnatural and toxic substances. Champion's attempted limitation of the meaning of this phase is a factual question that is not appropriately resolved on a motion to dismiss, where the facts pled in the complaint must be accepted as true. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

Plaintiff also alleges that Defendants' representations that it uses "Fresh Regional Ingredients" "Delivered Daily" and that the Contaminated Dog Foods are "Made with Fresh and Natural Ingredients" are misleading because Champion sources ingredients both internationally and across the United States and uses ingredients that have been frozen and stored for years. ¶14. Facts developed during discovery will prove the literal falsity of these representations. Champion contends that Plaintiff needs to identify which ingredients were falsely marketed. This is nonsensical. The representations appear on the finished food product, and Plaintiff alleged that he was unaware that the foods contained any ingredients that did not conform to the label. ¶¶20-21.[7] "Made with Fresh and Natural Ingredients" is similarly properly pled, as Plaintiff has alleged that the Contaminated Dog Foods have "a risk of inclusion of BPA, Pentobarbital, and other unnatural ingredients." ¶63; *see Jones v. Int'l Ass'n of Bridge Structural Ornamental & Reinforcing Iron*

---

[7] With respect to Champion's argument about the AAFCO definition of "raw," (Defs.' Mem. at 11 & n.9), this fact is outside the SAC and thus irrelevant. Moreover, there are no facts in the SAC suggesting that Plaintiff or any other reasonable consumer would know this definition.

*Workers*, 864 F. Supp. 2d 760, 765 (E.D. Wis. 2012) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Similarly, Defendants' misrepresentations that its dog food will "Nourish as Nature Intended," that it "Deliver[s] Nutrients Naturally," and that it is made of "Premium Meat and Fish Ingredients" and "Ingredients deemed fit for human consumption" can be factually proven by showing that Plaintiff's allegations about the presence of heavy metals, BPA, pentobarbital, and other contaminants are true. *See, e.g.*, ¶¶6-7. As a result, they are not puffery, particularly because they convey that the food "is nutritious and safe." *See Leppert*, 2019 WL 216616, at *7-8. BPA and pentobarbital are not natural. *See* ¶129. Plaintiff and other reasonable consumers would not expect "Premium Meat and Fish Ingredients" to contain high levels of heavy metal or to contain BPA or pentobarbital. ¶20. Defendants' motion as to these claims should be denied because Plaintiff pled facts to show that these statements are factually false.

Defendants also claim that their foods are "Never Outsourced," and, contrary to Champion's argument, it is not clear from its packaging that this "plainly refers to the finished foods, not ingredients." Defs.' Mem. at 12. Plaintiff's SAC alleges that the Contaminated Dog Foods contain "ingredients like meals and tallow that were not manufactured" by Champion (¶61), which is a relevant misrepresentation given that Defendants have failed to inspect or visit the ingredient suppliers of certain meals to ensure that the quality and source of the ingredients matches the representations made to consumers. ¶15. Plaintiff would not have purchased the Contaminated Dog Foods had he known this fact. ¶20. Each of the misrepresentations alleged in the SAC are actionable and should not be dismissed.

## VI. PLAINTIFF HAS ADEQUATELY STATED A CLAIM FOR BREACH OF EXPRESS WARRANTY

"The elements for a breach of express warranty are: (1) an affirmation of fact; (2) inducement to the buyer; and (3) reliance thereon by the buyer." *Selzer v. Brunsell Bros., Ltd.*, 2002 WI App 232, ¶13, 257 Wis. 2d 809, 820, 652 N.W.2d 806, 811 (Wis. Ct. App. 2002). Plaintiff has alleged that he reviewed the packaging prior to his purchases of the Contaminated Dog Foods and relied on Defendants' claims when deciding to make his purchases. ¶20. Because of Defendants' false claims, he was unaware that the Contaminated Dog Foods contained, or had a risk of containing, heavy metals, pentobarbital, toxins, BPA, non-regional and non-fresh ingredients, unnatural ingredients, and ingredients that otherwise failed to conform to Defendants' claims. *Id*. As a result, Plaintiff was injured when he paid a price premium in reliance on the false claims. ¶21. Had he known Defendants' claims were false, Plaintiff would not have paid this price premium or would not have purchased the food at all. *Id*. Moreover, it is undisputed that Defendants directly marketed and warranted the Contaminated Dog Foods to consumers such as Plaintiff and the proposed Class, and that they had exclusive and final control over the packaging, distribution, advertising, display, and pricing of their Contaminated Dog Foods. ¶¶111-13, 147-48.

Defendants argue solely that the express warranty claim must be dismissed for lack of privity. Contrary to Defendants' assertions, however, Wisconsin does not require vertical privity to plead a claim for breach of an express warranty when a consumer purchases the produce in reliance upon representations that a manufacturer made directly to consumers. *Lamont v. Winnebago Indus., Inc.*, 569 F. Supp. 2d 806, 815 (E.D. Wis. 2008) ("[Defendant] is clearly mistaken in its contention that Wisconsin requires the purchaser to deal directly with the manufacturer of a product in order to sue the manufacturer for breach of the manufacturer's express

warranty."); *Sunnyslope Grading, Inc. v. Miller, Bradford and Risberg, Inc.*, 148 Wis. 2d 910, 915-16, 437 N.W.2d 213, 215 (Wis. 1989) (holding that the ultimate purchaser of a machine and the machine's manufacturer are parties to an enforceable warranty even though purchase was made through dealer); *In re MI Windows and Doors, Inc. Prods. Liab. Litig.*, No. 2:12-mn-00001-DCN, 2012 WL 6674522, at *2 (D.S.C. Dec. 21, 2012) (finding that "Wisconsin courts have recognized the extension of express warranties to remote purchasers"); *Midwhey Powder Co., Inc. v. Clayton Indus.*, 157 Wis. 2d 585, 592, 460 N.W.2d 426, 430 (Wis. Ct. App. 1990) (same); *Ball v. Sony Elecs. Inc.*, No. 05-cv-307-S, 2005 WL 2406145, at *5 (W.D. Wis. Sept. 28, 2005) (noting claims for breach of express and implied warranty claims are treated differently with respect to privity, and summarizing authority dispensing of privity requirement for express warranties); *Hoppe v. SmithKline Beecham Corp.*, 437 F. Supp. 2d 331, 339 (E.D. Pa. 2006) (*Ball* "notes … that a limited exception [to the privity requirement] may be made for express warranty claims where, at the time of purchase, the manufacturer's warranty was expressly disclosed to and relied upon by buyer."); *Paulson v. Olson Implement Co., Inc.*, 107 Wis. 2d 510, 518-19, 319 N.W.2d 855, 859 (Wis. 1982) (finding privity existed when manufacturer made direct misrepresentations to plaintiffs and thus rejecting argument that manufacturer could escape liability for express warranty claim for alleged lack of privity).

None of Defendants' cited authority compels a different result—indeed, Defendants' authority fails to even ***reference*** the privity exception for express warranty claims at issue here. *St. Paul Mercury Ins. Co. v. The Viking Corp.*, 539 F.3d 623 (7th Cir. 2008), to which Defendants cite (Defs.' Mem. at 15) and on which this Court relied in its ruling in *Loeb*, is inapposite because it discusses a different claim and different privity exception. There, the plaintiff pursued a "warranty claim" against the manufacturer of an allegedly defective sprinkler system, arguing it

need not prove privity because such a requirement is "unfair and outmoded" and would leave plaintiff without a remedy given Wisconsin's expansion of its economic loss doctrine. *Id*. at 625, 628. The plaintiff argued it should not be required to show privity when it was also left without any relief in tort. *Id*. at 628. The court rejected the plaintiff's argument, relying solely on *Daanen & Janseen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 415, 573 N.W.2d 842 (Wis. 1998), for the unrelated proposition that the economic loss doctrine applies regardless of whether privity otherwise exists between the parties. *Id*.

Neither *St. Paul* nor *Daanen* reference any representations made to the plaintiffs. *Id*. at 625 ("There is no evidence that [plaintiff] ever received any warranty information, advertising, or other literature from [defendant] regarding the sprinklers prior to the accident."); *Daanen*, 216 Wis. 2d at 398, 573 N.W. at 844 ("At the time [plaintiff] purchased the [product], [plaintiff] apparently was unaware of [manufacturer's] warranty, and [distributor] did not pass this warranty to [plaintiff]."). The same goes for *Van's Realty & Const. of Appleton, Inc. v. Blount Heating & Air Conditioning, Inc.*, 134 Wis. 2d 452, 397 N.W.2d 156 (Table) (Wis. Ct. App. Oct. 7, 1986), Defendants' unpublished authority. *Id*. ("[Plaintiff] offered no evidence of any dealings with [defendant] until after the heat pumps were installed."). Accordingly, Defendants' authority is without any relevance to the facts before this Court.

Nor do *St. Paul* nor *Daanen* deal with **express** warranty claims, which distinction is critical because, as set forth above, Plaintiff's privity argument applies to express warranty claims, not implied warranty claims. In *St. Paul*, the court refers only to the claims at issue as "warranty claims," and a review of the operative complaint suggests it was an **implied** warranty claim that was at issue. *See St. Paul Mercury Ins. Co. v. The Viking Corp.*, No. 2:04-cv-01124 (E.D. Wis.), ECF Nos. 1-3 (included in Appendix filed concurrently herewith); ¶26 (describing the breach of

warranties as that of "warranties of merchantability and fitness for a particular purpose"). In *Daanen*, there were not *any* warranty claims before the court.

*Twin Disc*, *Inc. v. Big Bud Tractor, Inc.*, 582 F. Supp. 208, 214-215 (E.D. Wis. 1984), is also inapplicable because it predates Plaintiff's authority and conflates privity under implied and express warranties. As in *St. Paul* and *Daanen*, the parties never argued, and the court never considered, whether Wisconsin acknowledges the widespread privity exception to warranty claims at issue here. *Gliniecki v. Brunswick Corp.*, No. 12-cv-280, 2012 WL 2046500 (E.D. Wis. June 6, 2012), likewise dismisses a claim for breach of *implied* warranty (Count II) and of *implied* warranty under the Magnuson-Moss Warranty Act (Count V). *Id*. at *1-2. Nor did it discuss Wisconsin's privity exception to express warranty claims at issue here.

Because none of Defendants' authority refutes—much less addresses—Plaintiff's controlling authority recognizing that Wisconsin law does not require privity on the facts before this Court, Plaintiff's claim for breach of express warranty must stand.[8]

## VII. FRAUD BY OMISSION IS SUFFICIENTLY PLED

Defendants' attempt to escape their duty to disclose the existence of dangerous substances in their Contaminated Dog Foods has already been rejected by one district court. *See Reitman*, 2019 U.S. Dist. LEXIS 67540, at *16 (finding a duty to disclose where the plaintiffs "allege[d] that Defendants knew this information was important to their customers"). The same result is compelled here.

Under Wisconsin law, a duty to disclose arises when:

(1) the fact is material to the transaction; (2) the party with knowledge of that fact knows that the other party is about to enter into the transaction under a mistake as to the fact; (3) the fact is peculiarly and exclusively within the knowledge of one party, and the mistaken party could not reasonably be expected to discover it; and

---

[8] Plaintiff voluntarily dismisses his negligence claim without prejudice.

(4) on account of the objective circumstances, the mistaken party would reasonably expect disclosure of the fact.

*Schmidt v. Bassett Furniture Indus.*, 08-C-1035, 2009 WL 3380354, at *10 (E.D. Wis. Oct. 20, 2009). Plaintiff's complaint goes beyond mere "'asymmetric information'" to satisfy these criteria. *Leppert*, 2019 WL 216616, at *11.

Plaintiff first alleges that the presence of heavy metals, pentobarbital, BPA, and other contaminants was material to his transaction with Defendants. ¶21. He also alleges that Defendants knew this was material to him and other consumers, and that Defendants failed to disclose the information anywhere on the products' packaging. ¶¶6, 26-40 (discussing risks of heavy metals and consumer concerns about the same), ¶¶41-45 (discussing risks of pentobarbital), 51-52 (discussing consumer concerns about pentobarbital), ¶53 (discussing risks of BPA). Plaintiff further alleges that this information was exclusively within Defendants' knowledge and that neither he nor other consumers could be expected to discover it:

> [A] reasonable consumer would have no reason to suspect the presence of heavy metals, pentobarbital, BPA, non-regional and non-fresh ingredients, and/or unnatural [or] other ingredients that do not conform to the labels, packaging, advertising, and statements in the Contaminated Dog Foods without conducting his or her own scientific tests, or reviewing third-party scientific testing of these products.

¶87. Finally, Plaintiff alleges that he and other consumers believed, based on Defendants' packaging and representations regarding testing, that the presence of these non-conforming ingredients would be disclosed. ¶¶59-64; *see also* ¶39 (alleging Defendants tout on website that they require their suppliers to "provide heavy metals and mercury test results, for which we also

test our final food products"). Accepting these allegations as true, Plaintiff has adequately pled a duty to disclose and a claim for fraud by omission.[9]  *Schmidt*, 2009 WL 3380354, at *10.

## VIII.   THE UNJUST ENRICHMENT CLAIM IS PROPERLY PLED

In Wisconsin, an unjust enrichment claim requires "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Sands v. Menard*, 2017 WI 110, ¶30, 379 Wis. 2d 1, 18, 904 N.W.2d 789, 798 (Wis. 2017), *recons. denied*, 2018 WI 20, ¶30, 300 Wis. 2d 107, 909 N.W.2d 176, *and cert. denied*, 139 S. Ct. 101 (2018).  Here, the SAC contains all necessary allegations to plead an unjust enrichment claim. First, Plaintiff conferred a benefit on Defendants by paying a premium, or the purchase price, for the Contaminated Dog Foods based on marketing representing the products as possessing natural, healthy, and quality ingredients. ¶¶3-5, 10-12, 20-21, 67-69, 79-81, 169-175. As a result of these representations, Plaintiff was led to believe that the Contaminated Dog Foods did not contain toxic or harmful substances such as BPA and heavy metals. ¶¶7, 24, 38-39, 50-52, 58-64, 86-87, 92-95, 99-102. Second, Plaintiff alleges that Defendant knew about the toxic or harmful concentrations and sold the products at a premium price anyway. ¶¶3, 20-21, 79-81, 169-175. Defendants' acceptance and retention of the benefit would be inequitable because Plaintiff purchased products that were not as marketed, and Plaintiff would not have bought the Contaminated Dog Foods had

---

[9] The *Leppert* decision relied on by Defendants does not beg a different result. There, the district court was interpreting the common law of the State of Indiana, which requires "a fiduciary relationship or a relationship of trust and confidence where defendant is in a position of influence and superiority over plaintiff'" or "'a half-truth … [that] obligate[s] [the defendant] to tell the full truth.'" *Leppert*, 2019 WL 216616, at *11. Neither of these is an element of fraud by omission in the State of Wisconsin.

the true quality and ingredients been disclosed. ¶¶17, 20-21, 52, 79-81, 94, 133, 136, 149, 156; *see also Loeb*, 2018 WL 2745254, at *8-9 (upholding unjust enrichment claims on motion to dismiss).

Defendants' citation to *Associated Banc-Corp. v. John H. Harland Co.*, No. 06-C-1097, 2007 WL 128337, at *2 (E.D. Wis. Jan. 11, 2007) ("[u]njust enrichment involves getting something for nothing, not providing a product for a price"), is inapposite. *See* Defs.' Mem. at 17-18. In that case, defendant had a contract with plaintiff bank to provide checks to the bank's customers. When the contract ended, defendant promised to forward new orders to the new check supplier but instead continued to take thousands of orders. The Court, in dicta, noted that providing checks to the bank's customers was not the sort of "benefit" that an unjust enrichment claim would cover. Moreover, the Court found that any benefit defendant received was not conferred on it by the plaintiff bank. Here, however, the "benefit" of overpayment for a falsely advertised product was, in fact, conferred on Champion by Plaintiff.

Defendants also claim that because Plaintiff purchased the Contaminated Dog Foods from a third-party retailer, he does not plead the first element of an unjust enrichment claim—that he conferred a benefit on Champion. Defendants' focus on the lack of a direct relationship between Plaintiff and Defendants is misplaced. Unjust enrichment is an equitable doctrine. *See Spensley Feeds, Inc. v. Livingston Feed & Lumber, Inc.*, 128 Wis. 2d 279, 288, 381 N.W.2d 601, 605 (Ct. App. 1985). "[A] claim for unjust enrichment does not arise out of an agreement [or quasi-contract] entered into by the parties. Rather, an action for recovery based upon unjust enrichment is grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." *Watts v. Watts*, 137 Wis. 2d 506, 530, 405 N.W.2d 303, 313 (Wis. 1987). As the court in *Sands*, 2017 WI 110, ¶30, 379 Wis. 2d at 18, 904 N.W.2d at 798, noted:

> Properly understood, *Watts* stands for a very simple proposition: Wisconsin's public policy favoring marriage does not prohibit unmarried formerly cohabitating couples from asserting unjust enrichment claims against one another. *Watts*, 137 Wis. 2d at 532. In such cases, the focus is on the benefit received by one party from the other party which would be inequitable to retain. *Boldt v. State*, 101 Wis. 2d 566, 573, 305 N.W.2d 133 (1981). ***Therefore, the proper focus is on property accumulated***, not on the type of personal relationship that existed between the parties.

*Sands*, 904 N.W.2d at 801.

Similarly, the focus here should be on the benefit conferred on Defendants by Plaintiff and not upon whether the relationship between the parties was direct or indirect. Here, in addition to Plaintiff's claims that Champion's false statements induced him to purchase the Contaminated Dog Food, Plaintiff alleges that Champion charged a premium price for a product that was purportedly higher-quality food, when in reality it was contaminated and had little or *de minimis* value based on the presence of contaminants that do not conform to the labels, packaging, advertising, and statements. ¶¶3, 20-21, 80, 92. This additional allegation addresses the element of a benefit conferred on Champion—in the form of overpayment for a purportedly premium product. That benefit, although indirect, was passed through the third-party retailer from Plaintiff to Champion with no intervening events to disrupt the flow. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 U.S. Dist. LEXIS 110635, at *52 (N.D. Cal. Sep. 28, 2011) (finding no Wisconsin law conclusively precluding unjust enrichment claims against manufacturer where plaintiffs purchased through intermediaries); *Ramsey v. Ellis*, 168 Wis. 2d 779, 785, 484 N.W.2d 331, 333 (Wis. 1992) ("damages in an unjust enrichment claim are measured by the benefit conferred upon the defendant").

The cases Defendants cite do not allege overpayment for a product that was marketed as a premium product and are thus distinguishable. *See Blitz v. Monsanto Co*., 317 F. Supp. 3d 1042, 1046 (W.D. Wis. 2018) ("Blitz alleges that the statement on the label intimating that Roundup was

safe to use around people and pets induced him to purchase the product, and that he suffered pecuniary loss as a result."); *Emirat AG v. High Point Printing, LLC*, 248 F. Supp. 3d 911, 937 (E.D. Wis. 2017) (dismissing unjust enrichment claims against subcontractor printing company because of the existence of contract between plaintiff and co-defendant). Moreover, in *Loeb*, 359 F. Supp. 3d 597, the allegations are different and the plaintiff made "no attempt to distinguish" the cases cited by Defendants. *Id*. at 605. Taken to its logical extension, Defendants' argument means that an unjust enrichment claim will almost never be available in a retail sales context. Virtually all retail sales are based on transactions with the end purchaser and a retailer who purchases from a distributor who, in turn, buys from the manufacturer. Thus, the wrongdoer manufacturer who benefits from the harm visited on the end purchaser consumer is insulated from unjust enrichment liability through the privity of contract defense. That can hardly be appropriate precedent for the state of Wisconsin.

Defendants' Motion must be denied because the Plaintiff adequately pleads a claim for unjust enrichment under Wisconsin law.

## IX. CONCLUSION

For the reasons stated above, Defendants' Motion should be denied in its entirety. If the Court grants any portion of the Motion, Plaintiff respectfully request he be given leave to amend.

Dated: April 25, 2019

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By: s/ Rebecca A. Peterson
CHARLES N. NAUEN, #1031943
ROBERT K. SHELQUIST
REBECCA A. PETERSON
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: cnnauen@locklaw.com
rkshelquist@locklaw.com
rapeterson@locklaw.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON
KARLA M. GLUEK
RAINA C. BORRELLI
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
rborrelli@gustafsongluek.com

ROBBINS ARROYO LLP
STEVEN M. MCKANY (271405)
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: smckany@robbinsarroyo.com

CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA
KATHERINE VAN DYCK
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
        charles@cuneolaw.com

LITE DEPALMA GREENBERG, LLC
JOSEPH DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
        scruzhodge@litedepalma.com

*Attorneys for Plaintiff*

1350979