**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **SCOTT WEAVER,** individually and on behalf of all others similarly situated**,** <br><br> **PLAINTIFF,** <br><br> **v.** <br><br> **CHAMPION PETFOODS USA, INC.** and **CHAMPION PETFOODS LP,** <br><br> **DEFENDANTS** | Case No. 2:18-cv-01996-JPS |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

I.       INTRODUCTION ...........................................................................................................1

II.      STATEMENT OF FACTS ...........................................................................................1

         A.       CPF Consistently Used Deceptive Labeling to Target Class Members .................1

         B.       Defendants Knew the Labels were False and Misleading ......................................2

                  1.       Fresh Regional Ingredients .........................................................................2

                  2.       Biologically Appropriate .............................................................................4

                  3.       Never Outsourced .......................................................................................5

         C.       Defendants Breached Their Duty of Disclosure to the Class .................................5

         D.       Common Evidence Will Be Used to Prove Damages.............................................7

         E.       Plaintiff is Representative of the Class ..................................................................7

III.     PROCEDURAL HISTORY AND PROPOSED CLASSES ........................................8

IV.      LEGAL STANDARD...................................................................................................9

V.       ARGUMENT...............................................................................................................10

         A.       Rule 23(a) Requirements .....................................................................................10

                  1.       Numerosity Satisfied.................................................................................10

                  2.       Commonality Satisfied...............................................................................10

                  3.       Typicality Satisfied ...................................................................................17

                  4.       Adequacy of Representation Satisfied .......................................................19

         B.       The Proposed Class Meets the Requirements of Rule 23(b)(3)............................20

                  1.       Predominance Satisfied..............................................................................21

                  2.       Superiority Satisfied..................................................................................26

         C.       Rule 23(c)(4) Issues Class Certification ..............................................................27

         D.       Rule 23(b)(2) Requirements .................................................................................29

VI.     CONCLUSION.................................................................................................................30

## CASES

*Allen v. Conagra Foods, Inc.*,
    --- F.R.D. ---, No. 3:13-cv-01279, 2019 WL 3302821 (N.D. Cal. July 22,
    2019) ...............................................................................................................13, 14

*Amchem Prods., v. Windsor*,
    521 U.S. 591 (1997)......................................................................................................21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    133 S. Ct. 1184 (2013)...............................................................................................9, 20

*Apple Inc. v. Samsung Elecs. Co.*,
    735 F.3d 1352 (Fed. Cir. 2013).....................................................................................24

*Armes v. Sogro, Inc.*,
    No. 08-C-0244, 2011 WL 1197537 (E.D. Wis. Mar. 29, 2011)......................................21

*Balschmiter v. TD Auto Fin. LLC*,
    303 F.R.D. 508 (E.D. Wis. 2014) ..................................................................................10

*Bauer v. Kraft Foods Glob., Inc.*,
    277 F.R.D. 558 (W.D. Wis. 2012).................................................................................17

*Blihovde v. St. Croix Cty., Wis.*,
    219 F.R.D. 607 (W.D. Wis. 2003).................................................................................22

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013) ................................................................................ *passim*

*Bzdawka v. Milwaukee Cnty.*,
    238 F.R.D. 469 (E.D. Wis. 2006) ..................................................................................17

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ........................................................................................27

*Chesemore v. Alliance Holdings, Inc.*,
    276 F.R.D. 506 (W.D. Wis. 2011).................................................................................17

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*,
    797 F.3d 426 (7th Cir. 2015) ....................................................................................21, 22

*Comcast Corp. v. Behrend*,
    564 U.S. 27 ...............................................................................................22, 23, 24, 25

*Day v. Check Brokerage Corp.*,
    240 F.R.D. 414 (N.D. Ill. 2007).....................................................................................10

*De La Fuente v. Stokely-Van Camp, Inc.*,
  713 F.2d 225 (7th Cir. 1983) ......................................................17

*Donovan v. Philip Morris USA, Inc.*,
  268 F.R.D. (D. Mass. 2010)........................................................21

*Flanagan v. Allstate Ins. Co.*,
  242 F.R.D. 421 (N.D. Ill. 2007) *modified on other grounds*, 242 F.R.D.
  434...............................................................................10

*Flynn v. FCA US LLC*,
  327 F.R.D. 206 (S.D. Ill. 2018) ..................................................24

*Fournigault v. Indep. One Mortg. Corp.*,
  234 F.R.D. 641 (N.D. Ill. 2006) *as amended on reconsideration in part*,
  No. 94 C 1742, 2007 WL 1423866 (N.D.Ill. May 10, 2007) ......................9, 19

*Guido v. L'Oreal USA, Inc.*,
  No. 2:11-cv-1067-CAS, 2014 WL 6603730 (C.D. Cal. July 24, 2014) ............25

*Hazelwood v. Bruck Law Offices SC*,
  244 F.R.D. 523 (E.D. Wis. 2007) ................................................10

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ...........................................24

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
  757 F.3d 599 (7th Cir. 2014*)* ..............................................11, 29

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ................................................24

*Jimenez v. GLK Foods, LLC*,
  No. 12-C-209, 2014 WL 2515398 (E.D. Wis. June 4, 2014) ...............27, 28, 29

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
  634 F.3d 883 (7th Cir. 2011) ..................................................30

*Kazarov v. Achim*,
  No. 02 C 5097, 2003 WL 22956006 (N.D. Ill. Dec.12, 2003) ....................29

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ..................................................11

*Le v. Kohls Dep't Stores, Inc.*,
  160 F. Supp. 3d 1096 (E.D. Wis. 2016)..........................................30

iv

*Loeb v. Champion Petfoods USA Inc.*,
  359 F. Supp. 3d 597 (E.D. Wis. 2019)................................................................12

*Marcial v. Coronet Ins. Co.*,
  880 F.2d 954 (7th Cir. 1989) ...........................................................................10

*McMahon v. LVNV Funding, LLC*,
  807 F.3d 872 (7th Cir. 2015) ...........................................................................27

*Messner v. Northshore Univ. Healthsystem*
  669 F.3d 802 (7th Cir. 2012) .............................................................................9

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) .........................................................................9, 16

*Musch v. Domtar Indus.*,
  252 F.R.D. 456 (W.D. Wis. 2008) ....................................................................10

*Novell v. Migliaccio*,
  2008 WI 44, 749 N.W.2d 544 (Wis. 2008).......................................................12

*Ollerman v. O'Rourke Co.*,
  288 N.W.2d 95 (Wis. 1980)..............................................................................14

*Olson v. Brown*,
  594 F.3d 577 (7th Cir. 2010) .............................................................................9

*Pella Corp. v. Saltzman*,
  606 F.3d 391 (7th Cir. 2010) .................................................................... *passim*

*Powell v. Tosh*,
  280 F.R.D. 296 (W.D. Ky. 2012)......................................................................16

*Retired Chicago Police Ass'n v. City of Chicago*,
  7 F.3d 584 (7th Cir. 1993) .................................................................................9

*Rohlfing v. Manor Care, Inc.*,
  172 F.R.D. 330 (N.D. Ill. 1997)........................................................................18

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ...........................................................................9

*Saltzman v. Pella Corp.*,
  257 F.R.D. 471 (N.D. Ill. 2009), *aff'd Pella Corp.*, 606 F.3d 391 ............. *passim*

*Schilling v. PGA Inc.*,
  293 F. Supp. 3d 832 (W.D. Wis. 2018) .............................................................17

*Schleicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010) ...........................................................9

*Schmidt v. Bassett Furniture Indus.*,
   No. 08-C-1035, 2009 WL 3380354 (E.D. Wis. Oct. 20, 2009) .......................14

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003) .............................................................21

*Smith-Williams v. United States*,
   No. 17-CV-823-WMC, 2019 WL 1866316 (W.D. Wis. Apr. 25, 2019) .................15

*Suchanek v. Sturm Foods, Inc.*,
   311 F.R.D. 239 (S.D. Ill. 2015) ................................................. *passim*

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) .................................................... *passim*

*Taft v. Derricks*,
   2000 WI App 103, 613 N.W.2d 190 (Wis. 2000) .....................................16

*Tylka v. Gerber Prod. Co.*,
   178 F.R.D. 493 (N.D. Ill. 1998) .......................................................30

*Wagner v. NutraSweet Co.*,
   95 F.3d 527 (7th Cir. 1996) ............................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................11, 21, 30

## STATUTES, RULES & OTHER AUTHORITIES

Fed. R. Civ. P.
   23 ........................................................................... *passim*
   23(a)(2) ...............................................................................10, 16
   23(a)(3) ...........................................................................9, 10, 17
   23(a)(4) ...............................................................................19, 20
   23(b) ..................................................................................9, 30
   23(b)(2) ...............................................................................29, 30
   23(b)(3) ..........................................................................20, 21, 25, 30
   23(c)(4) ..........................................................................27, 28, 29, 30
   53(a)(1)(B) ..............................................................................29

Wis. Stat.
   § 94.72 ............................................................................15, 16, 26, 28
   § 94.72(8)(b)(1) .........................................................................16

Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18 ......................8

vi

## I.  INTRODUCTION

Defendants[1] deceptively market their ultra-premium priced Dog Food[2] by promising that it is "Biologically Appropriate" and made with "Fresh Regional Ingredients" and "Natural Ingredients" that are "Delivered Daily," "Never Outsourced," and come from "trusted" suppliers. ¶¶3-4, 10, 71, 77, 79-96. Defendants further represented that their Dog Foods "Nourish as Nature Intended," "Delivering Nutrients Naturally." *See id.*  None of that is true.

In reality, Defendants intentionally concealed the true quality and content of the Dog Food by misrepresenting and concealing the presence and/or risk of inclusion of heavy metals, pentobarbital, toxins, Bisphenol A ("BPA"), and non-regional and non-fresh ingredients that do not conform to the labels. CPF deceptively marketed the true content and quality of the food, knowing that mislabeling allowed them to charge a premium for the Dog Food. CPF's common course of conduct—marketing, pricing, and failure to disclose—permeates the Rule 23 analysis. For these and the foregoing reasons, class certification is appropriate.

## II.  STATEMENT OF FACTS

### A.  CPF Consistently Used Deceptive Labeling to Target Class Members

The Dog Food is deceptively marketed to the same target audience, purchasers CPF calls "Pet Lovers", with the same mission and universal tag lines—"Biologically Appropriate," "Fresh Regional Ingredients," and "Never Outsourced" (collectively "BAFRINO"). *See, e.g.*, ¶26. Every bag markets the natural qualities of the Dog Food and states it is made using "trusted" suppliers. Report of Dr. Jon A. Krosnick at 39 (Ex. 1) ("Krosnick Report"). CPF intentionally targeted

---

[1] "Defendants" or "CPF" refers to Champion Petfoods USA, Inc. and Champion Petfoods LP.

[2] The "Dog Food" at issue is identified in Paragraphs 7 and 26 of the Third Amended Class Action Complaint ("TAC"). Unless otherwise noted, references to "¶" or "¶¶" are to the TAC, references to "Rule" are to the Federal Rules of Civil Procedure, and references to "Ex. __" are exhibits to the Declaration of Rebecca A. Peterson in support of this motion.

consumers that prioritized feeding their dogs food that offered the best nutritional value without risk of contaminants, toxins, or other low-quality ingredients. Defendants explain that these consumers are "who [are] dedicated to their pet[s], love[] their pet[s] and would do just about anything to ensure the health and well-being of their pet[s]." CPF1165408 at p. 8 (Ex. 2). Defendants chose the BAFRINO phrases to specifically target these consumers and to distinguish their Dog Food from other premium pet food brands. Defendants' intentional misrepresentations and pattern of deception allowed them to sell the Dog Food at premium prices, much higher than other pet foods, and increase their profit margins. CPF1973651 at -69, (Ex. 3).

## B. Defendants Knew the Labels were False and Misleading

### 1. Fresh Regional Ingredients

Defendants knew that the Class cared about and considered the promise of "Fresh Regional Ingredients" when purchasing the Dog Food. CPF1803444 (internal CPF e-mail from May 2017 noting that "[m]ore pet lovers are looking beyond the ingredient panel to see where their ingredients come from.") (Ex. 4); CPF0060142 (CPF gets so many questions about heavy metals in its food that it developed a "standard response.") (Ex. 5); CPF0190864 at pp. 36-37, 40, 42 (Ex. 6); CPF0221173 (Ex. 7). Indeed, Plaintiff testified that the freshness of the Dog Foods was important to his purchase decision. Weaver Dep. 31:1-32:6, 42:4-43:7, 73:22-74:2, 130:25-131:7 (Ex. 8). But Defendants knowingly use ingredients that are frozen, expired, and reground from old kibble (i.e. dry dog food). *See*, *e.g.*, CPF0089958 (CPF establishes a process for maximizing the shelf life of fresh meat products where the "odor, color, and consistency" are assessed) (Ex. 9); CPF1770001 (approving the use of expired fresh turkey meat in August 2016) (Ex. 10); CPF2062755 (Ex. 11); CPF1762571 (CPF policy allowing for the use of kibble that could not be sold for various quality reasons to be reground and put in future batches of kibble) (Ex. 12);

CPF1826327 (2018 e-mail discussing CPF's use of frozen rabbit that it has had stored for 3-4 years) (Ex. 13); Milam Dep. 261:8-10 (confirming CPF uses frozen rabbit) (Ex. 14). It also knowingly uses ingredients sourced from around the United States and all over the world. CPF0050936 at -44 to -45 (CPF purchases vitamins for its food from China) (Ex. 15); CPF0244035 (CPF purchases turmeric from India) (Ex. 16); CPF1710466 (CPF purchases Spray Dried Mackerel from Morocco) (Ex. 17).

Defendants' internal documents indicate that the "key" to "Fresh Regional" would be to have "no ... heavy metals" and to "eliminate ... synthetics." ¶¶7-9, 13, 29-77; CPF2088727 (internal CPF product concept document stating that their "Fresh Regional Ingredients" advertising is a "key differentiator" and means "[n]o … heavy metals" and "natural" ingredients) (Ex. 18); CPF0220192 (internal CPF five-year plan for Acana, stating that the food should have no synthetics and no heavy metals) (Ex. 19). Defendants knew or believed that "no … heavy metals" (or synthetics) was possible for their ultra-premium priced products. *Id.*

At the same time, CPF failed to follow any regular testing schedule to ensure the Dog Food conformed to the "Fresh Regional" claim. *See* CPF0191844 (CPF's White Paper admitting its foods contain heavy metals based on its own testing); CPF1295272 (2013 e-mail stating, "On the food safety side of things, there are a number of risks that we are completely blind to that we really need to be looking at doing surveillance on as a company. These include … heavy metals ….") (Ex. 21); CPF0172530 (2017 e-mail stating, "It looks like the testing schedule hasn't been followed too well, all of the fish diets are supposed to get heavy metals analysis as part of their extra testing.") (Ex. 22). Instead, CPF misleadingly suggested that they had already arrived at their "no ... heavy metals" (or synthetics) high mark by promising "Fresh Regional Ingredients."

The Dog Food also has a risk of containing BPA and pentobarbital, ingredients that are without a doubt neither "Fresh" nor "Regional." ¶¶7, 13, 92. And again, even though Defendants were aware of these risks, they conducted no BPA testing to ensure conformance with their labels and simply relied on the representations of their packaging suppliers that their products were BPA-free. Minnaar Dep. 35:14-16 ("Q: Have you ever asked a suppler as part of the audit process for BPA test results? A: I have not.") (Ex. 23); CPF0143720 (statement from CPF packaging supplier that it relied on its raw material suppliers to state that the raw materials do not contain BPA) (Ex. 24). And they purchased and used tallow from a high-risk rendering facility (JBS USA Holdings, Inc. ("JBS")) that contained and/or had a risk of containing pentobarbital from euthanized (i.e. not "fresh") animals. CPF1748144 (2017 CPF discussion of pentobarbital contamination in other pet foods that used JBS as a supplier) (Ex. 25); Minnaar Dep. 71:8-17 (CPF was aware that JBS accepted animals euthanized with pentobarbital and had asked JBS to manufacture CPF's ingredients without any "dead or condemned carcasses.") (Ex. 23); CPF2117191 (during a 2018 CPF audit of JBS, it found buildup of other products on equipment and spilled product on floors) (Ex. 26). Thus, the Dog Food is not made with Fresh Regional Ingredients.

## 2. Biologically Appropriate

"Biologically Appropriate" is a nutritional statement made by CPF on all of the Dog Foods' packaging that speaks directly to their quality. *See* ¶¶21, 91. Defendants tout that it is tied to freshness and a natural diet. CPF0001957 (Orijen Regional Red package defining "biologically appropriate" as "NOURISH AS NATURE INTENDED—ORIJEN mirrors the richness, freshness and variety of WholePrey™ meats that dogs are evolved to eat.") (Ex. 27); CPF0001874 (Acana Duck and Pear package stating the same) (Ex. 28). Yet the Dog Food contained non-fresh ingredients (*e.g.* regrinds and expired ingredients) and contaminants (heavy metals, BPA, etc.) that

would not be the fresh Biologically Appropriate diet promised and marketed by CPF. Likewise, the contaminants contained in the Dog Food, such as BPA and pentobarbital, are unnatural and are not Biologically Appropriate for any animal. Muhlenfeld Dep. 137:4-138:17 (testifying that, by looking at the Dog Foods' packaging, consumers could not know that pentobarbital might be present) (Ex. 29); Brown-Tarry Dep. 82:7-11 ("Q: Is pentobarbital biologically appropriate?... A: Well, it's not a food or an ingredient, so no.") (Ex. 30). Moreover, the Dog Food uses a "grain free" formula that the FDA has found associated with Dilated Cardiomyopathy ("DCM"). ¶14. In fact, Defendants' Dog Food represents 14.88% of the total reported cases of DCM in the past five years. *Id.* In sum, the Dog Food is not "Biologically Appropriate."

### 3. Never Outsourced

CPF regularly outsource the manufacture of certain components of their Dog Food, such as the contaminated beef tallow and meal purchased from JBS, a rendering facility known for accepting dead animals. ¶¶61-68, 93; *see supra* Section II.B.1. Defendants' outsourcing of its tallow and meal clearly contravenes the "Never Outsourced" promise.

### C. Defendants Breached Their Duty of Disclosure to the Class

The common evidence will show hat Defendants did not disclose the true quality of their Dog Food to Class members, even when they specifically asked. For instance, CPF never disclosed the results of their sporadic heavy metal testing. *See* CPF0066047 (instructing CPF employees not to share heavy metal test results with consumers) (Ex. 31); CPF0210007 (CPF decides not to include "details of sampling frequency, lot numbers, specific diets etc." in its White Paper) (Ex. 32); CPF0211931 (June 2017 e-mail chain stating that CPF did not want to disclose its actual heavy metal testing schedule because they perform "less than 1 test per year per diet for one kitchen only so I don't think that would come across in a positive light.") (Ex. 33). CPF also intentionally

misled consumers when considering what images would support their "Fresh Regional Ingredients" claim. For example, Defendants never included a picture of JBS on their bags, and they intentionally omitted that a farmer pictured was actually part of Tyson Foods Inc., a multinational corporation and one of the world's largest food companies and meat processors. CPF1817671 (Ex. 34). This pattern continued when it came to the risk of pentobarbital. ¶¶62-65. CPF chose not to recall any of its JBS Dog Food (as defined herein) or even warn consumers when they learned that JBS sold them tallow contaminated with pentobarbital that ultimately made it into CPF's products and onto retail shelves all over the country. Wagner Dep. 98:6-20 (Ex. 35). Instead, Defendant Champion Petfoods USA, Inc. initiated a lawsuit to seek damages for the pentobarbital-contaminated tallow it purchased from JBS without ever offering recompence to its customers for the JBS Dog Food containing tallow. *See* Ex. 36.

Every picture and word on CPF's packaging was designed to induce the Class members, whom CPF called Pet Lovers, to believe CPF's story of BAFRINO. ¶¶79-88. CPF made sure their image was protected by omitting "problematic" supplier names, concealing the lack of testing for heavy metals, and avoiding "panic in the marketplace" by concealing that they in fact made and distributed kibble with pentobarbital-contaminated tallow. CPF1817671 (Ex. 34); CPF0060142 (Ex. 5); CPF0066047 (Ex. 31); Wagner Dep. 47:10-20, 98:6-20 (Ex. 35). These facts were exclusively within Defendants' knowledge, and CPF knew that this information was material to consumers and deceptive. *See*, *e.g.*, (*compare* CPF1287266 (Ex. 37) email showing in 2011 would not use Indian products as misleading for Regional marketing *with* CPF0244035 (Ex. 16) e-mail dated August 2016 showing they are using Indian product).

### D. Common Evidence Will Be Used to Prove Damages

Common evidence will prove Plaintiff and the Class members' damages on a class-wide basis. Plaintiff's expert, Dr. Krosnick, conducted a survey to determine whether CPF's misrepresentations about the Dog Foods are material to consumers and whether they decreased the market value of the food. *See* Krosnick Report at 5, 78 (Ex. 1); Krosnick Dep. 12:6-24 (Ex. 38). This scientifically designed and conducted survey of 6,728 U.S. adult consumers showed the respondents photos and text from the Dog Food. Krosnick Report at 41 (Ex. 1). The respondents were then randomly selected to view anywhere from zero to eight "corrective statements" regarding the misrepresentations Defendants made about their Dog Food—i.e. the risk of the presence of heavy metals, the risk of the presence of BPA, that the food may contain ingredients that are not fresh, that the food may contain ingredients that are not regionally sourced, and that Defendants use third party manufacturers. *Id.* at 41-42. The results of this survey showed that the value of the Dog Food decreased with each additional piece of corrective information shown, demonstrating both that Defendants' misrepresentations were material and showing a percentage decrease in value attributable to each misrepresentation about the Dog Food that is common to all purchasers. *Id.* at 29-31. This survey data can be used to determine class-wide damages. *See* Declaration of Colin B. Weir, ¶12 ("Weir Report") (Ex. 39); *infra* Section V.B.1.a.

Dr. Krosnick conducted a separate survey of 859 U.S. adult consumers to determine whether the risk of the presence of pentobarbital in CPF's food was material to consumers. *See* Krosnick Report at 364-65 (Ex. 1). The results of this survey show that it was material. *Id.*

### E. Plaintiff is Representative of the Class

Plaintiff purchased the Dog Food from approximately 2008 to August 2017. ¶21; Weaver Dep. 45:15-22. Like the putative Class, he relied on Defendants' packaging, which bore the

"Biologically Appropriate," "Fresh Regional," "Never Outsourced" promises, when making his purchasing decisions. *Id*. at 42:4-43:7, 77:2-16, 81:12-16, 130:25-131:7. Plaintiff was unaware that the Dog Food had a risk of containing heavy metals, BPA, pentobarbital, non-regional, and non-fresh ingredients and would not have purchased the Dog Food had this information been disclosed. ¶¶21-22; *Id*. at 125:2-126:2, 130:25-131:17. Plaintiff understands his duties and responsibilities to the Class that he aims to represent. *Id.* at 112:2-16.

## III. PROCEDURAL HISTORY AND PROPOSED CLASSES

Following the Court's order granting in part and denying in part Defendants' motion to dismiss, Plaintiff filed his TAC on July 22, 2019. (Dkts. 39, 40). Plaintiff brings his motion for class certification in the interest of judicial expediency. He seeks to certify his claims under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18 ("WDTPA"), for intentional misrepresentation, and for common law negligence. Plaintiff proposes the below Class:[3]

> All persons residing in the State of Wisconsin who purchased Dog Food between July 1, 2014 and the present (the "Class Period").

Plaintiff also proposes the following the Pentobarbital Subclass for the same claims relating to pentobarbital:

> All persons residing in the State of Wisconsin who purchased JBS Dog Food between January 2016 and December 2018.[4]

Excluded from the Class and Subclass are persons or entities who purchased the Dog Food for business use or resale; governmental entities; Defendants and its affiliates, subsidiaries,

---

[3] Plaintiff reserves the right to amend the proposed Class definitions based on any changes in circumstances that may arise following resolution of summary judgment and *Daubert* issues that will likely be put before the Court after the filing of the instant motion.

[4] "JBS Dog Food" refers to Acana Regionals Appalachian Ranch, Acana Heritage Red Meat, and Orijen Regional Red manufactured and sold between January 2016 and December 2018.

employees, current and former officers, director, agents, and representatives; and members of this Court and its staff.

These class definitions "[are] not vague. [They] identif[y] a particular group of individuals … harmed in a particular way (defrauded by labels and marketing materials) during a specific period in particular areas." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660-61 (7th Cir. 2015). The definitions comply with settled law and are, as set forth below, ripe for certification. *Id*.

## IV.  LEGAL STANDARD

To obtain class certification, putative class representatives must demonstrate four prerequisites for certification under Rule 23(a) and at least one basis for certification under Rule 23(b). *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992); *Fournigault v. Indep. One Mortg. Corp.*, 234 F.R.D. 641, 644 (N.D. Ill. 2006) *as amended on reconsideration in part*, No. 94 C 1742, 2007 WL 1423866 (N.D.Ill. May 10, 2007). "A district court has broad discretion to determine whether certification of a class action lawsuit is appropriate."[5] *Olson v. Brown*, 594 F.3d 577, 584 (7th Cir. 2010). Plaintiff is responsible for showing that class certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993).

The Court does not inquire into the merits of the claims unless and "only to the extent … that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194-95 (2013). Courts should only consider law and facts germane to certification. *Id*. at 1195; *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). Consideration of the merits "runs the risk of supplanting the jury as the finder of fact." *Messner v. Northshore Univ. Healthsystem* 669 F.3d 802, 823 (7th Cir. 2012).

---

[5] Here, as throughout, all emphasis is deemed added and citations and footnotes are deemed omitted unless otherwise noted.

In making a determination on class certification, "Rule 23 should be liberally interpreted in favor of the maintenance of class actions." *Hazelwood v. Bruck Law Offices SC*, 244 F.R.D. 523, 524 (E.D. Wis. 2007); *Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 427 (N.D. Ill. 2007) *modified on other grounds*, 242 F.R.D. 434. Any material doubts about the facts should be resolved in favor of certification. *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 417 (N.D. Ill. 2007).

## V.     ARGUMENT

### A.     Rule 23(a) Requirements

#### 1.     Numerosity Satisfied

"The first requirement of Rule 23(a) is that the proposed class 'be so numerous that joinder of all members is impracticable.'" *Suchanek v. Sturm Foods, Inc.* ("*Suchanek II*"), 311 F.R.D. 239, 253 (S.D. Ill. 2015). Numerosity is a low bar. Plaintiffs are not required to provide the exact number of persons in the proposed subclasses. *Musch v. Domtar Indus.*, 252 F.R.D. 456, 460 (W.D. Wis. 2008) (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989)). "The Seventh Circuit has implied that even a class of forty may be sufficient to warrant class certification." *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 515 (E.D. Wis. 2014). Defendants sold millions of dollars of Dog Food to a myriad of class members during the class period, (*see* Weir Report, ¶34) (Ex. 39), which would far exceeds a class of forty individuals.  As such,  it is undisputed that Plaintiff satisfies the low threshold for the numerosity prong  *Suchanek II*, 311 F.R.D. at 253.[6]

#### 2.     Commonality Satisfied

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." "The Supreme Court has explained that 'for purposes of Rule 23(a)(2) even a single common question will do.'"  *Suchanek v. Sturm Foods, Inc.* ("*Suchanek I*"), 764 F.3d 750, 755 (7th Cir.

---

[6] Numerosity is not disputed by Defendants.

2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (quotation marks and alteration omitted in original). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id*. at 756 (citing *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010); *see also In re IKO Roofing Shingle Prods. Liab. Litig*. ("*IKO Roofing*"), 757 F.3d 599, 602 (7th Cir. 2014*)* (common question of whether roofing shingles sold to all class members complied with national industry standard as represented on packaging); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 798 (7th Cir. 2013) (common question of whether products sold to class members contained certain defects, "although damages [were] likely to vary across class members"). "What matters to class certification is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Suchanek I*, 764 F.3d at 755. (quoting *Wal-Mart*, 564 U.S. at 350) (alteration omitted); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (common questions arise where "the defendants have engaged in standardized conduct towards members of the proposed class"). "The determinative question is whether the same issues would necessarily be re-litigated over and over again if plaintiffs were required to bring separate actions." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 478 (N.D. Ill. 2009), *aff'd Pella Corp*., 606 F.3d 391..

Rule 23 does not require that every question be common. *Suchanek I*, 764 F.3d at 756. "It is routine in class actions to have a final phase in which indivi3dualized proof must be submitted." *Id*. The U.S. Court of Appeals for the Seventh Circuit ("Seventh Circuit") has explained that, "if commonality of damages were also essential, 'then class actions about consumer products are impossible.'" *Id.* (quoting *IKO Roofing*, 757 F.3d at 602). As in *Suchanek I*, the Class members' claims "all derive from a single course of conduct by [Defendants]: the [deceptive] marketing and

packaging of [Dog Food]." *Id*. As a Wisconsin-only class, their claims are also governed by the same legal standards. Thus, the commonality element is satisfied.

**a.**      **Defendants Violated the WDTPA**

Plaintiff will succeed on his WDTPA claim by showing: "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was 'untrue, deceptive or misleading,' and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Loeb v. Champion Petfoods USA Inc.*, 359 F. Supp. 3d 597, 602 (E.D. Wis. 2019) (quoting *Novell v. Migliaccio*, 2008 WI 44, ¶49, 749 N.W.2d 544, 553 (Wis. 2008)). Reasonable reliance "is not an element of a statutory false representation claim." *Novell*, 749 N.W.2d at 550, ¶27.

The first element is inarguably common to the Class. CPF made the BAFRINO representations to the public on the Dog Foods' packaging. CPF0001957 (Ex. 27); CPF0002832 (Ex. 40); CPF0001872 (Ex. 41); CPF0001967 (Ex. 42); CPF0001969 (Ex. 43). These promises were uniformly made on every package of Dog Food sold during the Class Period and pervade CPF's marketing of the Dog Food. *Id.*; *see also infra* Section V.A.3 (discussing typicality); Krosnick Report at 33-41 (Ex. 1). Whether the representations were made with an "intent to induce an obligation" will also be established through common evidence, such as internal communications and market studies produced by CPF showing that the representations at issue were crafted to convey certain product qualities and induce customers to purchase their ultra-premium products. CPF0145434 at -473 to -478, -481, -523 (Ex. 44); CPF0220182 (Ex. 45); CPF0145738 (Ex. 46); CPF2119446 at -79, -82 (Ex. 47). By promising to provide "Fresh Regional Ingredients," CPF conveyed that their ingredients were neither old, expired, nor frozen; that these ingredients were sourced from places nearby or in Kentucky; and that the Dog Food was free of heavy metals, BPA,

and pentobarbital. The "Biologically Appropriate" promise likewise guaranteed that Dog Food was free of contaminants such as heavy metals, BPA, and pentobarbital.

The second element—whether the representations were "untrue, deceptive or misleading" —is also common to the Class. Plaintiff will rely on common evidence to prove the representations at issue are untrue, deceptive, and misleading. *Allen v. Conagra Foods, Inc.*, --- F.R.D. ---, No. 3:13-cv-01279, 2019 WL 3302821, at *20 (N.D. Cal. July 22, 2019). For example, internal documents will establish that all of the Dog Foods contain ingredients that are neither "Fresh" nor "Regional" but contain expired, reground, internationally sourced, old, and frozen ingredients. CPF2056512 (Ex. 48); CPF1717808 (Ex. 49); CPF1739610 (Ex. 50); CPF1762571 (Ex. 12); CPF1789156 (Ex. 51); CPF2117188 (Ex. 52); CPF1826327 (Ex. 13); CPF2111520 (Ex. 53); CPF1948871 (Ex. 54); CPF1180627 (Ex. 55). Moreover, internal documents show that, although Defendants understood Fresh Regional ingredients to mean zero heavy metals and synthetic ingredients, the Dog Foods contain BPA, arsenic, lead, mercury, and/or cadmium. CPF2088727 (Ex. 18); CPF0220192 (Ex. 19); CPF1984403 (Ex. 56); CPF2058413 (Ex. 57); CPF2058407 (Ex. 58). Finally, internal and governmental documents will show that the JBS Dog Food purchased by the Pentobarbital Subclass was at a high risk of containing pentobarbital and that CPF's universal "grain free" recipes created serious health risks, all in contravention of CPF's representations that its Dog Foods are "Biologically Appropriate," made with "Fresh Regional Ingredients," and "Never Outsourced." CPF2118689 (Ex. 59); CPF2118826 (Ex. 60); CPF2120192 (Ex. 61); CPF1345402 (Ex. 62); CPF1813273 (Ex. 63). In short, Plaintiff "will rely on common evidence to prove the labels were objectively deceptive or misleading." *Allen*, 2019 WL 3302821, at *20. "[T]his is an objective question, not one that depends on each purchaser's subjective understanding of the package," and it alone satisfies the commonality requirement. *Suchanek I*, 764 F.3d at 758.

The third element—whether these representations caused pecuniary harm—is likewise a common question. With respect to the Pentobarbital Subclass, Plaintiff will pursue a full refund model, as the JBS Dog Food they purchased should never have been sold in the first place. With respect to the Class, "individualized inquiries into loss will not be necessary here because [Plaintiff] rel[ies] on expert testimony to support [his] price premium theory." *Allen*, 2019 WL 3302821, at \*20; *see infra* Section V.B.1.a. Specifically, expert testimony will establish that consumers would have paid less for, or never purchased, the Dog Food but for Defendants' deceptive marketing. These common questions will drive the issue of liability, and Plaintiff will answer them with common evidence. *Suchanek II*, 311 F.R.D. at 254.

**b.    Intentional Misrepresentation**

Wisconsin defines fraud as:

> (1) a false representation of fact; (2) made either knowing that it was untrue, or recklessly not caring whether it was true or false; (3) made with intent to deceive the plaintiff in order to induce the plaintiff to act on it to plaintiff's pecuniary damage; and (4) plaintiff's detrimental reliance on the representation as true.

*Schmidt v. Bassett Furniture Indus.*, No. 08-C-1035, 2009 WL 3380354, at \*10 (E.D. Wis. Oct. 20, 2009). "If there is a duty to disclose a fact, failure to disclose that fact is treated in the law as equivalent to a representation of the non existence of the fact." *Ollerman v. O'Rourke Co.*, 288 N.W.2d 95, 100 (Wis. 1980). A duty to disclose arises when:

> (1) the fact is material to the transaction; (2) the party with knowledge of that fact knows that the other party is about to enter into the transaction under a mistake as to the fact; (3) the fact is peculiarly and exclusively within the knowledge of one party, and the mistaken party could not reasonably be expected to discover it; and (4) on account of the objective circumstances, the mistaken party would reasonably expect disclosure of the fact.

*Schmidt v. Bassett Furniture Indus.*, 08-C-1035, 2009 WL 3380354, at \*10 (E.D. Wis. Oct. 20, 2009).

As with Plaintiff's WDTPA claim, the first three elements are common to the Class and subject to common evidence, namely whether CPF's BAFRINO representations were false and were made with knowledge of falsity or reckless disregard for the truth and intent to deceive. *See supra* Section II.B & V.A.2.a.

With respect to Plaintiff's omission-based claims, whether Defendants had a duty to disclose the risk of heavy metals and DCM (the Class) and pentobarbital (Pentobarbital Subclass), is likewise subject to common questions generating common answers. Like the intent element, Plaintiff will offer common evidence in the form of market research and other internal documents showing that Defendants knew the truth about these risks and intentionally concealed them from the Class. CPF1295272 (Ex. 21); CPF1827829 (Ex. 64); CPF2117191 (Ex. 26); CPF0092151 (Ex. 65); CPF0211931 (Ex. 33); FDA Establishment Inspection Report (Ex. 66). The same evidence will show that the risks were material to the Class members but exclusively within the knowledge of Defendants. CPF0145134 (Ex. 67); CPF0102704 (Ex. 68); CPF2083798 (Ex. 69). And the final element only requires objective evidence that a mistaken party would reasonably expect disclosure.

### c. Negligence

To prove negligence, Plaintiff need only show "(1) [a] duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Smith-Williams v. United States*, No. 17-CV-823-WMC, 2019 WL 1866316, at *4 (W.D. Wis. Apr. 25, 2019). Plaintiff will demonstrate that CPF's conduct amounts to negligence per se because they "violated their statutory duty under Wis. Stat. § 94.72, which prohibits the sale and distribution of adulterated and misbranded feed products." ¶187. Statutory violations give rise to a negligence per se claim when:

> (1) the harm inflicted was the type the statute was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there

is some expression of legislative intent that the statute become a basis for the imposition of civil liability.

*Taft v. Derricks*, 2000 WI App 103, ¶12, 613 N.W.2d 190, 194 (Wis. 2000). "The only issues are whether the statute has been violated, causation and damages." *Id.*, ¶11 "These are questions that can be determined on a class-wide basis." *Powell v. Tosh*, 280 F.R.D. 296, 307 (W.D. Ky. 2012), *on reconsideration*, No. 5:09-CV-121, 2012 WL 2601946 (W.D. Ky. July 5, 2012).

The common evidence used to prove Plaintiff's WDTPA claim also proves that CPF's Dog Food was adulterated and misbranded within the meaning of section 94.72 of the Wisconsin Statute Annotated ("Section 94.72"). Specifically, Plaintiff will show that "[t]he [] Dog Foods are adulterated as their composition and quality falls below or differs from what is on the label, including that they are "Biologically Appropriate," made with "Fresh Regional Ingredients," and are "Never Outsourced." ¶190. Plaintiff will also establish that the JBS Dog Food sold to the Pentobarbital Subclass contained or had a risk of containing a "poisonous or deleterious substance" that "render[ed] it injurious to the health of animals … [and] unsafe." Wis. Stat. § 94.72(8)(b)(1). Therefore, common evidence will prove duty and breach.

The causation and damages elements of Plaintiff's negligence claim similarly present common questions, such as whether Defendants' breaches of their statutory duties caused the Class to purchase misbranded and adulterated pet food that they would not have otherwise purchased.

In short, Plaintiff's claims all hinge on the truthfulness of CPF's labels. He alleges that the "Biologically Appropriate," "Fresh Regional," and "Never Outsourced" representations are untrue, misleading, and deceptive and violate Section 94.72. These are "'common contention[s]' that [are] 'capable of classwide resolution' because the 'determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Mullins*, 795 F.3d at 673. Rule 23(a)(2) is satisfied. *Id.*

### 3.     Typicality Satisfied

The third prong of Rule 23 requires that Plaintiff's claims be typical of other Class members. Fed. R. Civ. P. 23(a)(3). "The typicality requirement is meant to ensure that there is 'enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group.'" *Suchanek II*, 311 F.R.D. at 254. "It is well-established that typicality is satisfied if the named representative's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory.'" *Id.*; *Bauer v. Kraft Foods Glob., Inc.*, 277 F.R.D. 558, 562 (W.D. Wis. 2012). "The issue of typicality is closely related to commonality and should be liberally construed." *Saltzman*, 257 F.R.D. at 479; *Schilling v. PGA Inc.*, 293 F. Supp. 3d 832, 838 (W.D. Wis. 2018). "The standard for typicality does not require the facts underlying every claim to be identical." *Suchanek II*, 311 F.R.D. at 255. Typicality "should be determined with reference to the company's actions, not with respect to particularized defenses it may have against certain class members." *Chesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506, 513 (W.D. Wis. 2011) (citing *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)). It does not require a complete identity of claims:

> Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics as those of the putative class.  If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality…. [T]he typicality requirement is not highly demanding.

*Bzdawka v. Milwaukee Cnty.*, 238 F.R.D. 469, 475 (E.D. Wis. 2006). Where class members and class representatives purchase the same defective products, and they advance the same legal theories regarding those products, the typicality requirement is satisfied. *Saltzman*, 257 F.R.D. at 479. Typicality is not precluded by variations in the facts, *De La Fuente v. Stokely-Van Camp,*

*Inc.*, 713 F.2d 225, 232 (7th Cir. 1983), or in the amount of anticipated damages, *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 335-36 (N.D. Ill. 1997).

The labeling and marketing Plaintiff challenges is uniform and pervasive across Defendants' entire line of Dog Food. Every package, label, leaflet, and website contains promises that the Dog Foods are "Biologically Appropriate" and made with "Fresh Regional Ingredients" and "Natural Ingredients" that are "Delivered Daily," "Never Outsourced," and come from "trust suppliers." Krosnick Report at 33-41 (Ex. 1). "These three key philosophies have built trust in [Defendants'] brands worldwide." CPF0092456 (Ex. 70). These promises are reinforced through e-mails to customers. CPF0059711 (Ex. 71). Defendants coined the term "Biologically Appropriate." Brown-Tarry Dep. 67:17-20 (Ex. 30). It is their mandate. *Id.* at 80:21-23.

"BAFRINO" has been trademarked by Defendants and is regarded as the company's "roadmap" and "mandate." CPF1872976 at p. 6 (Ex. 72); CPF0071711 (Ex. 73). Defendants' digital marketing guides "ensure[] our BAFRINO story is being told beautifully *and consistently*." CPF0214757 at -59 (Ex. 74); CPF0214732 at -34 (Ex. 75). CPF's USA Retail Program Guide described its mission as follows:

> WE MAKE BIOLOGICALLY APPROPRIATE[TM] PET FOODS FROM FRESH REGIONAL INGREDIENTS FROM START TO FINISH IN OUR AWARD-WINNING KITCHENS.

CPF1804616 (Ex. 76). Even retail sales associates in stores must be "BAFRINO certified." *Id.* at -21. "It's all about BAFRINO!" CPF0062104 (Ex. 77).

Defendants' ingredient sourcing practices are likewise similar. For example, Defendants uniformly add regrinds to their products:

> We are now at 698 tonne of regrinds…. 51% of this inventory is comprised of Lamb regrinds and the Ranchlands Cat regrinds. The balance of this inventory is spread over all other areas in varying amounts.

CPF1739610 (Ex. 50). And the use of frozen ingredients is widespread, across all of CPF's products, rendering their uniform promise of fresh ingredients untrue, deceptive, and misleading. Muhlenfeld Dep., 248:25-250:6 (Ex. 29); Milam Dep. 262:16-25 (Ex. 14); Brown-Tarry Dep. 184:12-185:12 (Ex. 30). Finally, the tallow used in the JBS Dog Food purchased by the Pentobarbital Subclass was all delivered by the same supplier who had lax quality control procedures, exposing the Pentobarbital Subclass's pets to pentobarbital and rendering CPF's BAFRINO promises untrue, deceptive, and misleading.

In short, "the class members were all exposed to the exact same course of conduct by Defendants: the marketing and packaging." *Suchanek II*, 311 F.R.D. at 255. They were "duped into believing," *id.*, they were buying "Biologically Appropriate" dog food made with "Fresh Regional Ingredients" and "Natural Ingredients" that are "Delivered Daily," "Never Outsourced," and come from "trust suppliers." They allege they would have purchased a different food or paid less if they had known the true composition of the food. *Id.* Typicallity is satisfied.

### 4.    Adequacy of Representation Satisfied

Rule 23(a)(4) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement is satisfied when the named representatives have 'a sufficient interest in the outcome of the case to ensure vigorous advocacy' and '[do] not have interests antagonistic to those of the class.'" *Shuchanek I*, 311 F.R.D at 256 (alteration in original). To establish adequacy, Plaintiff must (1) retain competent counsel; (2) have a sufficient stake in the outcome of the litigation to ensure vigorous advocacy for the class; and (3) have no conflict of interest with the class. *See, e.g.*, *Saltzman*, 257 F.R.D. at 480; *Fournigault*, 234 F.R.D. at 646 (finding the subclass representatives met the "low standard" of adequacy).

Plaintiff has the same interests as the putative Class members. He purchased the same Dog Food bearing the same "Biologically Appropriate," "Fresh Regional," "Never Outsourced" promises. *See supra* II.E. The evidence martialed by Plaintiff shows that hundreds of consumers found that these statements were material in their purchase decision. *See Suchanek II*, 311 F.R.D. at 256; *see supra* Section V.B.1.a (discussing expert reports). The Class here "all have the same interest in proving the … packaging was unfair or deceptive." *Id*. at 257. Their claims will rise or fall on whether CPF's BAFRINO claims are untrue, deceptive, or misleading. "Additionally, they all suffered the same injury—they paid an inflated price … for a product they would not have bought at all had they known [the true ingredients]." *Id*. Plaintiff has no interests antagonistic to the Class, and he is an adequate representative of its interests.

Adequacy of representation also requires showing that the proposed class counsel will fairly and adequately protect the interests of the class. *Id*. at 256. Here, Plaintiff's counsel are well-respected members of the legal community with extensive class action experience. The undersigned attorneys have demonstrated in the course of this matter that they are qualified lawyers experienced in the successful prosecution of consumer class actions. Firm resumes setting forth their experience and expertise in the management and leadership of class action litigation are attached. Exs. 78-83. These firms have undertaken substantial work in this litigation and stand ready, willing, and able to devote the resources necessary to see this case through to a successful outcome. Rule 23(a)(4)'s adequacy requirement is satisfied.

### B. The Proposed Class Meets the Requirements of Rule 23(b)(3)

Plaintiff requests certification of the Class under Rule 23(b)(3), which "requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.'" *Amgen*, 133 S. Ct. at 1191. It does not require "that all issues be

common to the class.'" *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D., 28 (D. Mass. 2010)

(quoting *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)). "Rule 23(b)(3)

class actions are designed to 'cover cases in which a class action would achieve economies of time,

effort, and expense, and promote uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing [] undesirable results.'" *Suchanek I*, 764 F.3d at 759.

> The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution...of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id*. These factors are assessed against the common questions already identified. *Id*.

### 1. Predominance Satisfied

The predominance requirement "tests whether proposed classes are sufficiently cohesive

to warrant adjudication by representation." *Amchem Prods., v. Windsor*, 521 U.S. 591, 623 (1997).

It "goes hand in hand in hand with the commonality requirement" and, though more demanding,

is "usually satisfied when defendant's conduct toward proposed class members was standardized."

*Armes v. Sogro, Inc.*, No. 08-C-0244, 2011 WL 1197537, at *5 (E.D. Wis. Mar. 29, 2011).

> [T]he court needs to assess the difficulty and complexity of the class-wide issues as compared with the individual issues. The class issues often will be the most complex and costly to prove, while the individual issues and the information needed to prove them will be simpler and more accessible to individual litigants.

*Suchanek I*, 764 F.3d at 760. "An issue 'central to the validity of each one of the claims' in a class

action, if it can be resolved 'in one stroke,' can justify class treatment." *Butler*, 727 F.3d at 801

(quoting *Wal-Mart*, 564 U.S. at 350)). "Common issues of fact and law predominate in particular

when adjudication of questions of liability common to the class will achieve economies of time

and expense." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d

426, 444 (7th Cir. 2015). Plaintiff is not required "to prove that each element of her claim is

susceptible to classwide proof. What the rule does require is that common questions predominate over any questions affecting only individual class members.'" *Id*.

### a. Damages Are Measurable Class-Wide

The Seventh Circuit instructs that, when looking at predominance, "the court should begin with a 'rigorous analysis' into whether the plaintiffs' 'damages are susceptible of measurement across the entire class.'" *Suchanek I*, 764 F.3d at 760. "'Damages are susceptible of measurement across the entire class' if there is '*a single or common method* that can be used to measure and quantify the damages of each class member.'" *Suchanek II*, 311 F.R.D. at 257 (partial emphasis added). Plaintiff will present evidence supporting a full-refund theory for the Pentobarbital Subclass and price premium theory for the Class at large. These models are consistent with Plaintiff's liability theories and provide the common method this Circuit requires.

"[A]lthough it is true that there may be some variation in the class members' amount of damages, the cases are legion in which courts have rejected arguments that differences in damages among the class members should preclude class certification." *Blihovde v. St. Croix Cty., Wis.*, 219 F.R.D. 607, 621 (W.D. Wis. 2003). On this issue, the Seventh Circuit could not be more clear:

> It would drive a stake through the heart of the class action device … to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings…, the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits.

*Butler*, 727 F.3d at 801.

Plaintiff's theory of liability for the Class is that its members were charged a price premium for the Dog Food, so damages are measured by the benefit of the bargain. Plaintiff's damages model directly tracks this theory. *See Comcast Corp. v. Behrend*, 564 U.S. 27, 38 ("The first step

in a damages study is the translation of the **legal theory of the harmful event** into an analysis of the economic impact **of that event**."). As set forth in the Krosnick Report, a common class-wide decrease in value of the Dog Food was determined using the scientifically conducted survey methodology discussed above. *See supra* Section II.D. This decrease in value can be used, and was used by Plaintiff's expert Colin Weir, to calculate the economic loss Class members suffered due to CPF's deceptive labeling. *See* Weir Report at 15, Table 3 (Ex. 39).

This model directly ties Plaintiff's theory of liability to the damages sought, as required by *Comcast*. Each misrepresentation and omission (regarding heavy metals and BPA and fresh, regional, and never outsourced ingredients) decreases the value of the Dog Food by 10.7%. *See* Krosnick Report at 30 (Ex. 1). Where multiple misrepresentations apply, the decrease in value depends on how many of the misrepresentations are applicable. *Id.* For example, where all eight misrepresentations apply (as is the case with nearly all Dog Food in the Class), the decrease in value is 59.6%. *Id.* That is, Dr. Krosnick's survey determined the decrease in value of the Dog Food attributable to each of the misrepresentations alleged by Plaintiff–including the presence of each heavy metal and BPA, whether the ingredients are fresh, whether the ingredients are regional, and CPF's use of third-party manufacturers. *See id.* at 29-30. Thus, the theory of liability–that Defendants' labels were deceptive–is directly tied to the theory of damages–that Class members paid a significant price premium for the Dog Food. And this decrease in value is common to each Class member and can be used to determine damages. *See* Weir Report, ¶¶21-23; 35-37 (Ex. 39). Defendants' own internal documents support this theory as well. They charged nearly triple the cost of lower-end products such a Purina. CPF1973651 at -69 (Ex. 3) And Defendants' justified this premium with their "Biologically Appropriate" and "Fresh Regional" promises. CPF0257792 at -841 to -842, -852 to -853 (ex. 83); CPF1973651 at -65, -68 to -69 (Ex. 3).

Importantly, "[i]ndividual interpretation of the [m]isrepresentations is irrelevant to the determination of class-wide diminution in value damages." Weir Report at 16 (¶45) (Ex. 39). "If the market price for the Champion Pet Foods was higher as a result of the Misrepresentations, then ALL consumers will have paid a higher price than if the truth had been disclosed, regardless of their personal interpretations." *Id*. at 16-17 (¶46).

> Just as a rising tide lifts all boats, a reduction in demand reduces prices market-wide. This is why a market-based diminution in value percentage applies to all Class Members market-wide regardless of the absolute price they paid, and regardless of any individual Class Member's subjective valuation of the Products.

*Id*. at 7 (¶22).

Federal courts across the country, including in this Circuit, have accepted class-wide damages models based on surveys. *See*, *e.g.*, *Suchanek II*, 311 F.R.D. at 246 (consumer survey was sufficiently reliable to support expert's opinion); *Flynn v. FCA US LLC*, 327 F.R.D. 206, 225 (S.D. Ill. 2018) (use of an "enhanced" form of conjoint survey analysis was sufficient for plaintiffs to "[meet] their burden of showing a proposed class-wide damage calculation that is consistent with their theory of liability."); *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1368 (Fed. Cir. 2013) (holding that it was an abuse of discretion for the district court to fail to consider plaintiff's expert's survey analysis, and explaining that "there may be a variety of ways to show that a feature drives demand, including with evidence that a feature significantly increases the desirability of a product incorporating that feature"); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1022-32 (C.D. Cal. 2015) (holding that the proposed survey analysis was "sufficiently reliable to be used in calculating class-wide damages," and, therefore, satisfied *Comcast* as part of a hybrid damages methodology); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015) (accepting expert testimony that expert "will isolate the premium associated with the 50% thicker claim using one of three statistical methods: hedonic regression, a contingent valuation study, or a conjoint

analysis"); *Guido v. L'Oreal USA, Inc.*, No. 2:11-cv-1067-CAS (JCx), 2014 WL 6603730, at *5 (C.D. Cal. July 24, 2014).

The full-refund model is also well supported and quite simple. CPF sold pet food adulterated and misbranded in violation of state and federal regulations. The Dog Food sold to the Class should never have been placed on shelves or into the marketplace in the first place, and the Class is entitled to a full refund as a result. The damages model is therefore tied to Plaintiff's theory of liability in accordance with *Comcast*. *See* 569 U.S. at 38.

In short, these damages models are consistent with Plaintiff's theory of liability. *Suchanek II*, 311 F.R.D. at 259. "If a single class is certified for the purposes of establishing damages, each class member will receive a full refund or a partial refund." *Id*. This estimation of damages is all that is required under Rule 23(b)(3). *Suchanek I*, 764 F.3d at 760.

### b.    Common Questions of Truth in Labeling Predominate

The Seventh Circuit next instructs us to "assess whether the class allegations are 'satisf[ied] through evidentiary proof.'" *Id*. "Such proof might include, for example, survey or other evidence suggesting the relevant common traits of the class members, expert testimony supporting the classwide allegations, or analysis of the relative costs of prosecuting the class and individual issues in the case." *Id*. at 761. Here, Plaintiff has identified "a single, central, common issue of liability": whether CPF's promise of "Biologically Appropriate" dog food that is made with "Fresh Regional Ingredients" and "Never Outsourced" was untrue, deceptive, or misleading. These misrepresentations were placed on all of the Dog Food in prominent location with prominent fonts and sizing. They form the central ethos of CPF's marketing campaign and are common to the Class. Thus, whether these representations violated the WDTPA, Wisconsin common law

(intentional misrepresentation), or Section 94.72 (negligence per se) or their omissions violated their duty to disclose are, as described above, objective and common questions that predominate.

### a. Reliance and Causation Do Not Defeat Certification

"Every consumer fraud case involves individual elements of reliance or causation." *Suchanek II*, 764 F.3d at 759. This does not defeat certification. *Id*.; *Pella Corp.*, 606 F.3d at 394 (7th Cir. 2010). "Proximate causation and reliance are simpler issues than the issue of liability, and the information needed to prove them is more accessible to individual litigants than the information needed to prove liability." *Suchanek II*, 311 F.R.D. at 259-60. This is particularly true here, where Plaintiff is not alleging a complicated mechanical defect or injury to his pets. The central issue of liability is simply whether CPF's representations about the Dog Food were untrue, deceptive, or misleading. The next question is even simpler—whether the Class was harmed by those representations. "[I]f the class prevails on the common issue, it would be a straightforward matter for each purchaser to present her evidence on reliance and causation." *Suchanek I*, 764 F.3d at 760. Class members can simply state for themselves whether they relied on the representations at issue, and "individualized assessments can be conducted after liability is determined and damages are being considered." *Suchanek II*, 311 F.R.D. at 260.

### 2. Superiority Satisfied

When assessing superiority, "the court needs to assess the difficulty and complexity of the class-wide issues as compared with the individual issues." *Suchanek I*, 764 F.3d at 760. The class action mechanism is clearly superior to other available methods for the litigation of this matter. The common issues identified above "will be the most complex and costly to prove, while the individual issues and the information needed to prove them will be simpler and more accessible to

individual litigants." *Id.* For example, the costs of survey evidence and expert reports propounded by Plaintiff far exceed his damages. *Id.* There is little incentive to pursue such claims individually.

Absent class treatment, individual consumers would be forced to present the same legal and factual arguments and identical expert testimony in a multiplicity of trials. "For these reasons, it would be extraordinarily duplicative and wasteful of the time and resources of both the Court and the parties to litigate this question in individual cases." *Suchanek II*, 311 F.R.D. at 259. Resolution of the few individual issues in this case "does not make the class format unmanageable or support the denial of class certification." *Suchanek I*, 764 F.3d at 760. These issues are simplistic and easily resolved through attestations from class members. *Id.* It therefore "'…makes good sense' to resolve the common issue of liability 'in one fell swoop.'" *Id.*

### C.      Rule 23(c)(4) Issues Class Certification

Under Rule 23(c)(4), "an action may be brought or maintained as a class action with respect to particular issues." Thus, even if this Court finds that the central common issues surrounding CPF's false labels somehow do not predominate, it "has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments." *Pella Corp.*, 606 F.3d at 394; *see also McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 876 (7th Cir. 2015) ("It is well established that, if a case requires determinations of individual issues of causation and damages, a court may 'bifurcate the case into a liability phase and a damages phase.'"); *Butler*, 727 F.3d at 800 (noting this is "sensible way to proceed"); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues."). This "is consistent with the recommendation of the Seventh Circuit." *Jimenez v. GLK Foods, LLC*, No. 12-C-209, 2014 WL

2515398, at *10 (E.D. Wis. June 4, 2014); *see also Butler*, 727 F.3d at 798-99 (individual hearings

as to damage caused by two separate design defects); *Pella Corp.*, 606 F.3d at 395 (upholding

certification of six different statewide liability-only class so jury can decide whether windows had

defect while "[i]ssues of causation and damages issues…w[ould] be handled individually").

The Class here would benefit greatly from Rule 23(c)(4) certification. Plaintiff has

identified a number of common issues that are ripe for certification.  These include:

- whether Defendants' claims that the Dog Food was "Biologically Appropriate" and made with "Fresh Regional Ingredients" and "Natural Ingredients" that are "Delivered Daily," "Never Outsourced," and come from "trust suppliers" are untrue, deceptive, or misleading;

- whether Defendants made these representations with the intent to induce an obligation or deceive;

- whether Defendants knew the representations were untrue;

- whether Defendants made the representations with reckless disregard for their truth;

- whether CPF failed to disclose the risks of heavy metals, pentobarbital, and DCM;

- whether the risks of heavy metals, pentobarbital, and DCM were material to the sale of Dog Food;

- whether the risks of heavy metals, pentobarbital, and DCM were peculiarly and exclusively within Defendants' knowledge;

- whether the Class could reasonably be expected to discover those risks;

- whether, on account of objective circumstances, the Class would reasonably expect disclosure of those risks; and

- whether the Dog Food was adulterated or misbranded in violation of Section 94.72.

In sum, either CPF's marketing is deceptive or it is not, CPF either had a duty to disclose or they

did not, and CPF either violated Section 94.72 or they did not. *Jimenez*, 2014 WL 2515398, at *10.

Defendants "cannot avoid certification of a class action or shield [themselves] from liability by

acting so that individuals class members do not suffer identical damages, though they are subjected

to the identical behavior." *Id.*; *Butler*, 727 F.3d at 801. Certification pursuant to Rule 23(c)(4) is simply the appropriate. *Jimenez*, 2014 WL 2515398, at *10; *Butler*, 727 F.3d at 800.

Once Plaintiff establishes that CPF's labels are false, proving that individuals relied on them does not require the same technical expertise that was required in *Pella Corp.* or *IKO Roofing*. Instead, "each class member can simply state for himself that, based on [Defendants'] packaging, he mistakenly believed [the Dog Food] was ['Biologically Appropriate' or made with 'Fresh Regional' or 'Natural ingredients'], and he purchased it as a result of that mistaken belief." *Suchanek II*, 311 F.R.D. at 260. Rule 53 permits this Court to appoint a Special Master to "hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by…the need to perform an accounting or resolve a difficult computation of damages." Fed. R. Civ. P. 53(a)(1)(B). These "individualized assessments can be conducted after liability is determined and damages are being considered." *Suchanek II*, 311 F.R.D. at 260. Issue certification will advance litigation for the Class as Rule 23(c)(4) requires.

### D.       Rule 23(b)(2) Requirements

Plaintiff seeks certification under Rule 23(b)(2), requiring a "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

> Rule 23(b)(2) "does not require that all members of the class be aggrieved by the challenged conduct, but proponents of a Rule 23(b)(2) class must be able to demonstrate that the 'conduct or lack of it which is subject to challenge be premised on a ground that is applicable to the entire class,' and that the entry of declaratory or injunctive relief would remove a barrier or impediment common to the class."

*Saltzman*, 257 F.R.D. at 483 (quoting *Kazarov v. Achim*, No. 02 C 5097, 2003 WL 22956006 (N.D. Ill. Dec.12, 2003)). "When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate

or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident." *Wal-Mart*, 564 U.S. at 362-63.

"[T]here is no language in Rule 23(b) which expressly limits its remedies to either sections (1), (2), or (3) of Rule 23(b)." *Tylka v. Gerber Prod. Co.*, 178 F.R.D. 493, 501-02 (N.D. Ill. 1998). A Rule 23(b)(2) class and a Rule 23(b)(3) class may be certified where there is a real basis for both damages and an equitable remedy. *Pella Corp*, 606 F.3d at 392-93; *see also Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 895 (7th Cir. 2011). Much like in *Tylka*, Plaintiff alleges that Defendants sold "adulterated [products] and then engaged in false and misleading advertising. These actions, if true, are in direct opposition to the class." 178 F.R.D. at 501. So Plaintiff seeks certification under Rule 23(b)(2) to prohibit the future sale of adulterated and misbranded dog food. He alleges the Defendants' "deceptive advertising scheme is 'company-wide, pervasive, and continuous.'" *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1109 (E.D. Wis. 2016). This "likelihood of recurring economic injury" is sufficient to confer economic standing. *Id*. CPF's pervasive and common conduct toward the class also merits certification pursuant to Rule 23(b)(2), and is applicable toward the entire class. *Saltzman*, 257 F.R.D. at 483.

## VI.    CONCLUSION

Plaintiff respectfully requests that the Court grant this motion and certify the Class and Pentobarbital Subclass on all claims pursuant to Rule 23(b)(3) or, in the alternative, the common issues identified above pursuant to Rule 23(c)(4).  Plaintiff further requests that the Court certify a Rule 23(b)(2) class for injunctive relief, that he be appointed as Class Representative, and that the undersigned attorneys be appointed Class Counsel.

Dated: August 15, 2019

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By s/ Rebecca A. Peterson

CHARLES N. NAUEN, #1031943
ROBERT K. SHELQUIST
REBECCA A. PETERSON
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: cnnauen@locklaw.com
rkshelquist@locklaw.com
rapeterson@locklaw.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON
KARLA M. GLUEK
RAINA C. BORRELLI
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
rborrelli@gustafsongluek.com

ROBBINS ARROYO LLP
KEVIN A. SEELY (199982)
STEVEN M. MCKANY (271405)
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: kseely@robbinsarroyo.com
smckany@robbinsarroyo.com

CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA
KATHERINE VAN DYCK
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
charles@cuneolaw.com

LITE DEPALMA GREENBERG, LLC
JOSEPH DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
scruzhodge@litedepalma.com

PETERSON LAW and MEDIATION, LLC
MARK A. PETERSON (1016259)
1433 N. Water Street, Suite 400
Milwaukee, WI 53202
Telephone: (414) 877-7312
E-mail: mark@markpetersonlaw.com

*Attorneys for Plaintiff*