# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **SCOTT WEAVER,** individually and on behalf of all others similarly situated**,** | Case No. 2:18-cv-01996-JPS |
| **PLAINTIFF,** | |
| v. | |
| **CHAMPION PETFOODS USA, INC.** and **CHAMPION PETFOODS LP,** | |
| **DEFENDANTS.** | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE DEFENDANTS' EXPERT WITNESS, LORIN M. HITT, PURSUANT TO FEDERAL RULES OF EVIDENCE 702 AND 403**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND................................................................................................1

ARGUMENT........................................................................................................................4

    A.    The *Daubert* and Rule 702 Standard ....................................................................4

    B.    Dr. Hitt is Not Qualified to Opine on Dr. Krosnick's Survey ...............................6

    C.    Dr. Hitt's Opinions Regarding Dr. Krosnick's Surveys Are Speculative,
Unreliable, and Based on Insufficient Facts ............................................................9

    D.    Dr. Hitt's Opinions Regarding Dr. Krosnick's Survey Are Duplicative of
Dr. Hanssens' Opinions ..........................................................................................11

CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
   829 F. Supp. 2d 802 (D. Minn. 2011) .................................................................................. 9

*Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, No. 07 C,
   4718, 2010 WL 1687883 (N.D. Ill. Apr. 26, 2010) ............................................................ 6, 7

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .......................................................................................................... 4, 5

*Empire Med. Review Servs., Inc. v. CompuClaim, Inc.*,
   No. 13-CV-1283, 2018 WL 5823660 (E.D. Wis. Mar. 16, 2018) ........................................ 4, 6

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*,
   744 F. Supp. 2d 870 (E.D. Wis. 2010) ................................................................................... 5

*Flynn v. FCA US LLC*,
   327 F.R.D. 206 (S.D. Ill. 2018) .............................................................................................. 8

*Gopalratnam v. Hewlett-Packard Co.*,
   877 F.3d 771 (7th Cir. 2017) ............................................................................................... 4, 5

*Guido v. L'Oreal USA, Inc.*,
   No. 2:11-cv-1067-CAS (JCx), 2014 WL 6603730 (C.D. Cal. July 24, 2014) ......................... 8

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   382 F. Supp. 3d 687 (E.D. Mich. 2019) .................................................................................. 8

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................................................ 8

*Korte v. Exxonmobil Coal USA, Inc.*,
   164 F. App'x 553 (7th Cir. 2006) ...................................................................................... 9, 11

*Krik v. Exxon Mobil Corp.*,
   870 F.3d 669 (7th Cir. 2017) .................................................................................................. 5

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .......................................................................................................... 4, 5

*Lapsley v. Xtek, Inc.*,
  689 F.3d 802 (7th Cir. 2012) ............................................................................................... 4

*Loontjens v. Sentry Ins.*,
  No. 13-CV-1217-JPS, 2014 WL 5305893 (E.D. Wis. Oct. 15, 2014) ................................ 6, 7

*Smith v. Ford Motor Co.*,
  215 F.3d 713 (7th Cir. 2000) ............................................................................................... 5

*United States v. Lundy*,
  809 F.2d 392 (7th Cir. 1987) ............................................................................................... 5

**RULES**

Fed. R. Civ. P. 702(a) ............................................................................................................ 11

**OTHER AUTHORITIES**

REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 238 ....................................................... 6

# INTRODUCTION

When reviewing expert evidence, the Court must act as a gatekeeper to prohibit irrelevant and unreliable expert opinions. CPF's[1] expert, Dr. Lorin M. Hitt, admitted he is not an expert in survey design, yet he offers a number of opinions critiquing Plaintiff's survey expert, Dr. Krosnick's, diminution in value survey ("Damages Survey") design, methodology, and analysis. Such an unsupported opinion cannot be permitted under Fed. R. Evid. 702 or *Daubert*. Plaintiff moves to exclude Dr. Hitt's opinions regarding Dr. Krosnick's Damages Survey.

# FACTUAL BACKGROUND

CPF manufactured, marketed and sold Dog Food claiming that it was biologically appropriate, made with fresh regional ingredients, never outsourced, and natural even though it has a risk of containing heavy metals, BPA and pentobarbital as well as non-fresh and non-regional ingredients. As part of their evidence on class-wide damages, Plaintiff offered the expert opinions of Dr. Jon Krosnick and Mr. Colin Weir, who found price premium damages exist on a class-wide basis under Plaintiff's theory of liability. To determine a percent diminution in value associated with CPF's misrepresentations about its dog food, Dr. Krosnick designed and conducted a survey of nearly 7,000 U.S. consumers. Using the data from that Damages Survey, he calculated a diminution in value associated with the misrepresentations, which Mr. Weir then applied to CPF's sales data to determine class damages.

CPF offers the opinions of Dr. Hitt to rebut the opinions of Plaintiffs' experts Dr. Krosnick and Mr. Weir. Ex. 1 (Hitt Report at ¶¶1-4, 14). Dr. Hitt has an undergraduate degree in electrical

---

[1] "CPF" refers to Champion Petfoods USA, Inc. and Champion Petfoods LP. "Dog Food" is identified in Paragraphs 7 and 26 of the Third Amended Complaint ("TAC"). Unless otherwise noted, "¶" references are to the TAC and references to "Ex. __" are exhibits to the Declaration of Rebecca A. Peterson in support of this motion.

1

engineering and a Ph.D. in management, in which he focused his coursework in economics and statistics. *Id.* at ¶2. He teaches courses on competition and customer pricing as well as economics of technology at the University of Pennsylvania and the Massachusetts Institute of Technology economics. *Id.* at ¶¶1-4. His current research focuses "on the economics of information and economics of information technology," which is "the study of the impact of information on consumers, organizations and markets and the role of technology in influencing that." Ex. 2 (Hitt Dep. at 7:12-20).

Dr. Hitt admitted in his deposition that he has never designed or conducted a survey related to the market value attributable to certain aspects of consumer products. *Id.* at 12:9-12. He does not typically use surveys in his own work and has only designed between five and ten surveys throughout his career. *Id.* at 8:3-11; 11:10-13. Each of those five to ten surveys was conducted at large corporations to investigate business practices- none of them were related to consumer products in any way. *Id.* at 11:25-12:12. Specifically, Dr. Hitt has never designed a choice-based conjoint study and this survey methodology is "not something [he] would normally use in [his] own work." *Id.* at 18:10-14, 18:25-19:4. He has also never conducted any research in survey design, nor has he designed a survey has part of his litigation-related work. *Id.* at 32:3-6, 34:6-9. Presumably because of his lack of experience and expertise in survey design and analysis, Dr. Hitt was not retained by CPF to critique Dr. Krosnick's Damages Survey- that role was filled by CPF's expert Dr. Hanssens. *Id.* at 7:2-9.

Nevertheless, Dr. Hitt offers a number of opinions about Dr. Krosnick's survey design, methodology, and his analysis of the survey data. First, Dr. Hitt opines that Dr. Krosnick's Damages Survey, due to its design and analysis of the survey data, measures willingness to pay rather than market value, and is thus unrelated to Plaintiff's theory of harm. Ex. 1 (Hitt Report at

2

¶¶31-38) ("Based on my understanding of Dr. Krosnick's analysis, he has indeed attempted to estimate the reduction in mean willingness to pay associated with various numbers of corrective statements."). Second, Dr. Hitt opines that Dr. Krosnick's Damages Survey design is not an established methodology for estimating the effect of a change in a product attribute on consumer demand. *Id.* at ¶¶40-43. Specifically, he states that Dr. Krosnick's Damages Survey design, which involved showing respondents the complete packaging for one of two kinds of CPF dog food and then showing some respondents corrective information to remedy CPF's misrepresentations, is not a "standard, well-accepted approach to demand estimation for retail consumer products." *Id.* at ¶42. Third, Dr. Hitt opines that Dr. Krosnick's Damages Survey design "has no resemblance to the actual retail environment that consumers face when making purchasing decisions," and thus is not reliable. *Id.* at ¶¶44-49. Fourth, Dr. Hitt purports to analyze Dr. Krosnick's survey data and finds that Dr. Krosnick's percent decrease in value is not statistically significant across all relevant products. *Id.* at ¶¶50-55. Fifth, Dr. Hitt states that Dr. Krosnick's Damages Survey data does not support his conclusions about the percent diminution in value associated with correcting CPF's misleading and false misrepresentations. *Id.* at ¶¶56-60. Lastly, Dr. Hitt opines that Dr. Krosnick's survey design did not properly take supply-side factors into consideration because holding the quantity sold fixed as a matter of history and using manufacturer's suggested retail prices in the survey does not mirror all supply side factors. *Id.* at ¶¶67-80.

      Dr. Hitt is not qualified to offer any of these opinions given his lack of education, training, or experience in survey design, methodology and analysis. Moreover, Dr. Hitt did no independent work to support the sweeping generalizations he makes regarding Dr. Krosnick's survey. Finally, his opinions are duplicative of CPF's survey expert, Dr. Hanssens. Dr. Hitt's opinions regarding Dr. Krosnick's survey should be excluded under Rules 702 and 403.

3

# ARGUMENT

### A. The *Daubert* and Rule 702 Standard

The admissibility of expert testimony is governed by Rule 702, which "permits testimony by qualified experts where such testimony will help the trier of fact understand the evidence or decide the factual issues." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012). Such testimony must be relevant, reliable, and have a factual basis to be admissible under Rule 702. *Id.* The party offering the expert bears the burden of demonstrating that the expert testimony meets the requirements of Rule 702 and *Daubert*. *See Empire Med. Review Servs., Inc. v. CompuClaim, Inc.*, No. 13-CV-1283, 2018 WL 5823660, at *2 (E.D. Wis. Mar. 16, 2018).

Under the *Daubert* framework, the trial court serves "as an evidentiary gatekeeper, ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 778–79 (7th Cir. 2017) (quotation marks omitted; citation omitted). This gatekeeper role is necessary because "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)). The district court holds broad discretion in its gatekeeper function of determining the relevance and reliability of the expert opinion testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). In performing its gatekeeper role, the Court should examine "(1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Id.*

When determining the reliability of the proffered evidence, the Court should examine factors including, "whether or not the theory or technique has been (1) tested, (2) subjected to peer review and publication, (3) analyzed for known or potential error rate, and/or is (4) generally accepted within the specific scientific field." *Lapsley*, 689 F.3d at 810 (citing *Daubert*, 509U.S. at

4

595). Additional factors to consider include whether the testimony relates to "matters growing naturally and directly out of research they have conducted independent of the litigation," or developed "expressly for purposes of testifying," "[w]hether the expert has adequately accounted for obvious alternative explanations," and "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion." *Gopalratnam*, 877 F.3d at 779–80 (citation omitted). No single factor is determinative, and the Court may apply these factors flexibly based on the facts of the case. *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017) (citations omitted).

The same criteria used to assess the reliability of a scientific opinion is also used to evaluate the reliability of non-scientific, experience-based testimony. *See Kumho Tire*, 526 U.S. 137. As the Supreme Court explained in *Kumho Tire*:

> In certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community. Likewise, it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable.

*Id.* at 151.

Expert evidence is relevant where it will "assist the trier of fact with its analysis of any of the issues involved in the case." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 887 (E.D. Wis. 2010) (quoting *Daubert*, 509 U.S. at 587). Expert testimony is not relevant where that expert is testifying as to "facts that people of common understanding can easily comprehend." *United States*

*v. Lundy*, 809 F.2d 392, 395 (7th Cir. 1987). Expert testimony does not assist the trier of fact when that testimony relates to facts that jurors could determine on their own. *See Empire Med. Review Servs., Inc. v. CompuClaim, Inc.*, No. 13-CV-1283, 2018 WL 5823660, at *3 (E.D. Wis. Mar. 16, 2018) (citations omitted).

### B. Dr. Hitt is Not Qualified to Opine on Dr. Krosnick's Survey

Dr. Hitt lacks the education, training or experience required by Rule 702 for the admissibility of any opinions regarding the design and analysis of Dr. Krosnick's survey. His lack of experience weighs heavily against admitting the testimony about Dr. Krosnick's survey that he offers in this case and instead renders his opinions unhelpful to the trier of fact.

Rule 702 permits expert opinions where the expert is qualified by "knowledge, skill, experience, training, or education." The Court can consider "the proposed expert's full range of experience and training." *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, No. 07 C 4718, 2010 WL 1687883, at *3 (N.D. Ill. Apr. 26, 2010) (citations omitted). With respect to surveys, "education in psychology, marketing, and communication, or other related fields, may be pertinent." *Id.* (quoting Shari Seidman Diamond, *Reference Guide on Survey Research,* in Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 238 (2d ed. 2000)). "At the very least, the survey expert must understand 'survey methodology, including sampling, instrument design (questionnaire and interview construction), and statistical analysis.'" *Id.* (quoting Diamond, *Reference Guide on Survey Research*, in Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 238 (2d ed. 2000)). "Ultimately, whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Loontjens v. Sentry Ins.*, No. 13-CV-1217-JPS, 2014 WL 5305893, at *3

6

(E.D. Wis. Oct. 15, 2014) (internal quotation marks omitted; citation omitted). This means that the proposed expert's qualifications must provide some foundation for the expert to provide the opinions offered. *Id.*

CPF offers Dr. Hitt as an expert to rebut the opinions provided by Plaintiff's survey expert, Dr. Krosnick. Dr. Krosnick determined the diminution in value associated with CPF's misrepresentations about the Dog Food using a scientifically designed and conducted consumer survey. *See generally* Ex. 3 (Krosnick WI Report). However, as set forth below, Dr. Hitt is admittedly not an expert in survey design, analysis, or methodology, and is thus not qualified under Rule 702 or *Daubert* to offer any opinions regarding Dr. Krosnick's survey.

Dr. Hitt's educational background is in electrical engineering and management. Ex. 1 (Hitt Report at Appx. 1). His Ph.D. coursework focused on economics and statistics, and his teaching career focuses on competition and consumer pricing. *Id.* at ¶3. In his research, he studies "the impact of information on consumers, organizations and markets and the role of technology in influencing that." Ex. 2 (Hitt Dep. at 7:12-20). None of Dr. Hitt's education or experience gives him expertise in the type of consumer product valuation survey conducted by Dr. Krosnick. His degrees are not in psychology, marketing, or communication, *see Bobak Sausage Co.*, 2010 WL 1687883 at *3, and the survey work involved in his doctoral dissertation were corporate surveys, which is far afield from the Damages Survey Dr. Krosnick conducted in this case. Ex. 2 (Hitt Dep. at 11:14-12:4).

Similarly, Dr. Hitt's experience also does not provide him with the necessary qualifications to critique Dr. Krosnick's survey. In fact, Dr. Hitt admitted that he does not typically use surveys in his consumer behavior analysis work at all. *See Id.* at 63:18-64:4. Tellingly, none of the mere five to ten surveys he has designed and conducted throughout his career relate to the valuation of

7

a consumer product or attribute of a consumer product. *Id.* at 11:25-12:12. Furthermore, Dr. Hitt admitted that he has never designed or conducted a survey related to the market value attributable to certain aspects of consumer products. *Id.* at 12:9-12.

Despite his clear lack of education and experience in designing and conducting surveys to determine the value of a consumer product, or an attribute of a consumer product, Dr. Hitt opines that Dr. Krosnick's Damages Survey cannot validly determine the diminution in value associated with CPF's misrepresentations. *See generally* Ex. 1 (Hitt Report); Ex. 2 (Hitt Dep. at 72:8-15) (testifying that he does not believe market price can be determined through survey methods alone in any situation); *Id.* at 93:12-23 (in the cases where he has served as an expert witness, Dr. Hitt has never found that a conjoint survey was an appropriate methodology to determine a diminution in value). This opinion, which he is not even qualified to offer, is contrary to decisions in this Court and others finding that consumer surveys are an appropriate methodology to determine diminution in value in false advertising cases. *See, e.g. Flynn v. FCA US LLC*, 327 F.R.D. 206, 225 (S.D. Ill. 2018); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015); *Guido v. L'Oreal USA, Inc.*, No. 2:11-cv-1067-CAS (JCx), 2014 WL 6603730, at *5 (C.D. Cal. July 24, 2014). Because Dr. Hitt is admittedly not an expert in survey design and analysis, and admits that he was not retained to evaluate Dr. Krosnick's survey, his opinions as to Dr. Krosnick must be excluded. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 382 F. Supp. 3d 687, 694 (E.D. Mich. 2019) (excluding the expert's opinions rebutting plaintiffs' conjoint survey where the expert admitted he was not an expert in conjoint analysis and had never performed a conjoint analysis, and who also admitted at his deposition that he was not retained to estimate class damages at the point of sale).

8

Dr. Hitt does not meet the fundamental requirement under Rule 702 that he be qualified to opine on the design and analysis of a conjoint survey. Thus, he should be excluded from offering any such opinions.

### C. Dr. Hitt's Opinions Regarding Dr. Krosnick's Survey Are Speculative, Unreliable, and Based on Insufficient Facts

Expert testimony cannot be "based on subjective believe or unsupported speculation." *Korte v. Exxonmobil Coal USA, Inc.*, 164 F. App'x 553, 556 (7th Cir. 2006). Thus, expert testimony that is simply based on general knowledge rather than evidence "confirming the validity" of the opinions does not meet the requirements of Rule 702 and *Daubert*. *See Korte*, 164 F. App'x at 556 (excluding an expert that did not rely upon any testing, but rather relied on assumptions about the available facts of the case because his opinions were not sufficiently based on scientific methodology); *see also Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 826–27 (D. Minn. 2011) (holding that although an "expert does not necessarily have to conduct quantitative testing," they must have "identifiable factual bases" for their opinions, not simply conclusory statements).

Dr. Hitt's opinions regarding Dr. Krosnick's survey are not based on any independent survey, study, or evidence. He opines that Dr. Krosnick's survey does not determine a diminution in market value, but rather a change in willingness to pay, because it does not take into account the supply side of the market. *See* Ex. 1 (Hitt Report at ¶¶31-38) (opining that willingness to pay and market value are not the same, and that using willingness to pay overstates damages); *id.* at ¶¶61-73 (opining that Dr. Krosnick's survey does not take supply side factors into consideration). However, Dr. Hitt did not do any work to determine whether including the supply side factors he believes are necessary would affect the diminution in value results Dr. Krosnick found. *See* Ex. 2 (Hitt Dep. at 63:15-17) ("Q: In this case, you did not design any survey to support your opinions;

9

correct? A: That's correct."); *id.* at 77:1-5 ("Q: So you don't know whether the results of using that methodology [that incorporates supply-side] would be any different than what Dr. Krosnick found in his survey? A: No…"); *id.* at 133:11-18 ("Q: And have you calculated the supply curve for the products at issue in the but-for world in this case? A: No, I have not attempted to propose a full structural supply-and-demand model.").

Dr. Hitt also opines that Dr. Krosnick's survey does not follow an "established methodology" for determining diminution in value attributable to a product feature. Ex. 1 (Hitt Report at ¶¶40-43). Of course, as discussed above, he is simply unqualified to offer such an opinion, and moreover, he has no evidence that using a different methodology would lead to a different result because he did not design or conduct a survey of his own. *See* Ex. 2 (Hitt Dep. at 63:15-17). But even if he was qualified, he did not design and conduct a hedonic regression, a random utility-discrete choice modeling framework, or a conjoint analysis. *Id.* at 95:13-96:6. Thus, this opinion about Dr. Krosnick's methodology is not based on any evidence. Rather, it is simply an observation that Dr. Krosnick's survey allegedly does not fall into one of the categories of surveys Dr. Hitt believes would be appropriate.

Dr. Hitt's opinion that Dr. Krosnick's survey "has no resemblance to the actual retail environment" suffers from this flaw as well, and is rife with conclusory statements that are not supported by evidence or any independent work showing that this alleged "flaw" had any impact on Dr. Krosnick's survey. Ex. 1 (Hitt Report at ¶¶44-49). For example, Dr. Hitt states that Dr. Krosnick's survey did not represent the market because consumers have multiple products available to purchase, but Dr. Hitt testified that this opinion is solely based on "my own personal observation as well as sort of general characteristics of retail environments." Ex. 2 (Hitt Dep. at 111:7-18). Similarly, Dr. Hitt opines that, unlike in Dr. Krosnick's survey, consumers may receive

information from retails sales representatives or online reviews, Ex. 1 (Hitt Report at ¶46), but then testifying that this opinion is based on "a general characteristic of consumer behavior," not any survey or study he conducted or referenced regarding the pet food market. Ex. 2 (Hitt Dep. at 113:8-22). With respect to these opinions, Dr. Hitt acknowledged "without doing another survey, you can't tell" whether the result would be different if the issues he identifies were addressed. *Id.* at 119:20-120:3. This cannot possibly meet the Rule 702 and *Daubert* reliability requirement. *See Korte*, 164 F. App'x at 556;

Expert opinions based on general principles without any study or testing tying those principals to the facts of the case do not meet the reliability requirement of Rule 702 and *Daubert*. Dr. Hitt's opinions regarding Dr. Krosnick's survey are simply speculative and would thus not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702(a). These opinions should be excluded.

### D. Dr. Hitt's Opinions Regarding Dr. Krosnick's Survey Are Duplicative of Dr. Hanssens' Opinions

Under Rule 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . wasting time, or needlessly presenting cumulative evidence." Dr. Hitt offers opinions that are duplicative of CPF's survey expert, Dr. Hanssens, who has significantly more experience than Dr. Hitt in designing and conducting surveys to value consumer product attributes. Dr. Hanssens was retained by CPF to "review and evaluate Dr. Krosnick's report and survey instrument." Ex. 4 (Hanssens Report at ¶4, 10). CPF intends to offer Dr. Hanssens to opine about Dr. Krosnick's survey design, including the fact that he only included two CPF products, that his survey cannot determine a change in market price but rather only willingness to pay, that Dr. Krosnick's survey did not replicate the real world purchasing

11

conditions, and that Dr. Krosnick's analysis of his data used the wrong methodology, among other opinions. *See generally id.*

Many of Dr. Hitt's opinions related to Dr. Krosnick's Damages Survey either overlap with or are identical to these opinions offered by Dr. Hanssens. Dr. Hitt opines that Dr. Krosnick's survey measures willingness to pay rather than market value. *See* Ex. 1 (Hitt Report at ¶¶31-36) ("Dr. Krosnick's definition [of value] is equivalent to the definition of *willingness to pay* generally used in economics and documented in introductory textbooks."). Dr. Hanssens offers an identical opinion. Ex. 4 (Hanssens Report at ¶¶38-42) (the "value" concept Dr. Krosnick tries to estimate is therefore nothing more than the maximum price an individual would be willing to pay when deciding whether to purchase a product—which is the precise definition of willingness to pay in academic literature."). Dr. Hitt opines that Dr. Krosnick's Damages Survey is unreliable because it "has no resemblance to the actual retail environment that consumers face when making purchasing decisions" because consumers generally have multiple product choices and can ask a retail representative for information or get more information from online sources. Ex. 1 (Hitt Report at ¶¶44-49). He also opines that the dog food market is a "differentiated product market" because of the number of products available to consumers, a diversity of consumer preferences for product attributes, and the different information consumers have access to when purchasing dog food. *Id.* at ¶¶81-91. Dr. Hanssens offers a nearly identical opinion. Ex. 4 (Hanssens Report at ¶¶140-158) (describing the dog food market in terms of pricing, the variety of products available to consumers, and the type of information consumers have available to them when purchasing dog food).

Dr. Hitt opines that Dr. Krosnick's survey design cannot find a diminution in market value because it did not properly take supply-side factors into consideration. Ex. 1 (Hitt Report at ¶¶67-

12

80) ("the analysis performed by Dr. Krosnick is solely a demand-side analysis and does not take into account any supply-side factors"). Dr. Hanssens offers an identical opinion. Ex. 4 (Hanssens Report at ¶42) ("Dr. Krosnick's Diminution in Value Survey is not equipped to incorporate any supply-side factors.").

As such, in addition to the fact that Dr. Hitt is not qualified to offer these opinions, these opinions from Dr. Hitt are cumulative of opinions from Dr. Hanssens and should be excluded under Rule 403.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Dr. Hitt be prohibited from offering any opinions as to Dr. Krosnick's survey.

Dated: October 4, 2019							LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By s/ Rebecca A. Peterson
CHARLES N. NAUEN, #1031943
ROBERT K. SHELQUIST
REBECCA A. PETERSON
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: cnnauen@locklaw.com
rkshelquist@locklaw.com
rapeterson@locklaw.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON
KARLA M. GLUEK
RAINA C. BORRELLI
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com

kgluek@gustafsongluek.com
rborrelli@gustafsongluek.com

ROBBINS ARROYO LLP
KEVIN A. SEELY (199982)
STEVEN M. MCKANY (271405)
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: kseely@robbinsarroyo.com
smckany@robbinsarroyo.com

CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA
KATHERINE VAN DYCK
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
charles@cuneolaw.com

LITE DEPALMA GREENBERG, LLC
JOSEPH DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
scruzhodge@litedepalma.com

PETERSON LAW and MEDIATION, LLC
Mark A. Peterson (Wisconsin SBN 1016259)
1433 N Water Street, Suite 400
Milwaukee, WI 53202
Telephone: (414) 877-7312
Email: mark@markpetersonlaw.com

*Attorneys for Plaintiff*